1   LIONEL Z. GLANCY (#134180)
    ROBERT V. PRONGAY (#270796)
2   LESLEY F. PORTNOY (#304851)
    CHARLES H. LINEHAN (#307439)
3   PAVITHRA RAJESH (#323055)
4   **GLANCY PRONGAY & MURRAY LLP**
    1925 Century Park East, Suite 2100
5   Los Angeles, California 90067
    Telephone: (310) 201-9150
6   Facsimile: (310) 201-9160
    Email: info@glancylaw.com
7

8   *Attorneys for Plaintiff*

9               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
10

11  MICHAEL GOMES, Individually and On        Case No.:
    Behalf of All Others Similarly Situated,
12
                            Plaintiff,          **CLASS ACTION COMPLAINT FOR**
13                                              **VIOLATIONS OF THE FEDERAL**
              v.                                **SECURITIES LAWS**
14
    EVENTBRITE, INC., JULIA HARTZ,
15  RANDY BEFUMO, KATHERINE               **JURY TRIAL DEMANDED**
    AUGUST-DEWILDE, ROELOF BOTHA,
16  ANDREW DRESKIN, KEVIN HARTZ,
    SEAN P. MORIARTY, LORRIE M.
17  NORRINGTON, HELEN RILEY,
    STEFFAN C. TOMLINSON, GOLDMAN
18  SACHS & CO. LLC, J.P. MORGAN
    SECURITIES LLC, ALLEN &
19  COMPANY LLC, RBC CAPITAL
    MARKETS, LLC, SUNTRUST
20  ROBINSON HUMPHREY, INC., and
    STIFEL, NICOLAUS & COMPANY,
21  INCORPORATED,

22                          Defendants.

23

24

25

26

27

28

Plaintiff Michael Gomes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Eventbrite, Inc. ("Eventbrite" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Eventbrite; and (c) review of other publicly available information concerning Eventbrite.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that: a) purchased or otherwise acquired Eventbrite securities pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2018 initial public offering ("IPO" or the "Offering"); and/or b) purchased or otherwise acquired Eventbrite securities between September 20, 2018 and March 7, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Eventbrite purportedly provides a platform to enable creators to plan, promote, and produce live events.

3.     In September 2017, Eventbrite acquired Ticketfly, LLC ("Ticketfly") from Pandora Media, Inc. for $201.1 million purportedly to expand the Company's solutions for music-related events.

4.     On September 20, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 11.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $246.0 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay certain debts,

including $30 million of indebtedness incurred to finance the Company's acquisition of Ticketfly, and for working capital and other general corporate purposes.

5.    On March 7, 2019, in connection with its full year 2018 results, the Company stated that integrating Ticketfly would be a headwind impacting the Company's future growth and revenue.

6.    On this news, the Company's share price fell $7.96 per share, or over 24%, to close at $24.46 per share on March 8, 2019, on unusually high trading volume.

7.    The Registration Statements were false and misleading and omitted to state material adverse facts. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's migration of customers from Ticketfly to Eventbrite was progressing slower than expected; (2) that, as a result, the Ticketfly integration would take longer than expected; (3) that, as a result, the Company's revenue and growth would be negatively impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and

Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company has offices in this district.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.     Plaintiff Michael Gomes, as set forth in the accompanying certification, incorporated by reference herein, purchased Eventbrite securities during the Class Period and/or pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Eventbrite is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Eventbrite's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "EB."

15.     Defendant Julia Hartz ("Hartz") was, at all relevant times, the Chief Executive Officer and a Director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendant Randy Befumo ("Befumo") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendants Hartz and Befumo, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts

specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

18.   Defendant Katherine August-deWilde ("August-deWilde") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.   Defendant Roelof Botha ("Botha") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.   Defendant Andrew Dreskin ("Dreskin") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.   Defendant Kevin Hartz ("Kevin Hartz") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.   Defendant Sean P. Moriarty ("Moriarty") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.   Defendant Lorrie M. Norrington ("Norrington") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.   Defendant Helen Riley ("Riley") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.   Defendant Steffan C. Tomlinson ("Tomlinson") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.   Defendants Hartz, Befumo, August-deWilde, Botha, Dreskin, Kevin Hartz, Moriarty, Norrington, Riley, and Tomlinson are collectively referred to hereinafter as the "Securities Act Individual Defendants."

27.   Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.

28.   Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

29.   Defendant Allen & Company LLC ("Allen") served as an underwriter for the

Company's IPO.

30.     Defendant RBC Capital Markets, LLC ("RBC Capital") served as an underwriter for the Company's IPO.

31.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") served as an underwriter for the Company's IPO.

32.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO.

33.     Defendants Goldman Sachs, J.P. Morgan, Allen, RBC Capital, SunTrust, and Stifel are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

34.     Eventbrite purportedly provides a platform to enable creators to plan, promote, and produce live events.

35.     In September 2017, Eventbrite acquired Ticketfly, LLC ("Ticketfly") from Pandora Media, Inc. for $201.1 million to expand the Company's solutions for music-related events.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

36.     On September 18, 2018, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 19, 2018.

37.     On September 20, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 11.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $246.0 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay certain debts, including $30 million of indebtedness incurred to finance the Company's acquisition of Ticketfly, and for working capital and other general corporate purposes.

38.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

39.    Under applicable SEC rules and regulations, the Registration Statements were required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

40.    Under "Risk Factors," the Registration Statement stated, in relevant part:

***Acquisitions, investments or significant commercial arrangements could result in operating and financial difficulties.***

We have acquired or entered into commercial arrangements with a number of businesses in the past. For example, since 2015 we have acquired seven companies, including ticketscript and Ticketfly in 2017 and Ticketea and Picatic in 2018. Our future growth may depend, in part, on future acquisitions, investments or significant commercial arrangements, any of which could be material to our results of operations and financial condition. Financial and operational risks related to acquisitions, investments and significant commercial arrangements that may have an impact on our business include:

- use of cash resources and incurrence of debt and contingent liabilities in funding acquisitions may limit other potential uses of our cash, including for retirement of outstanding indebtedness, stock repurchases and dividend payments;

- difficulties and expenses in assimilating the operations, products, data, technology, privacy, data protection systems and information security systems, information systems or personnel of the acquired company;

- failure of the acquired company to achieve anticipated benefits, revenue, earnings or cash flows or our failure to retain key employees from an acquired company;

- the assumption of known and unknown risks, debt and liabilities of the acquired company, deficiencies in systems or internal controls, impairment of goodwill or other intangible assets and costs associated with litigation or other claims arising in connection with the acquired company;

- failure to properly and timely integrate acquired companies and their operations, reducing our ability to achieve, among other things, anticipated returns on our acquisitions through cost savings and other synergies;

- adverse market reaction to acquisitions;

- failure to consummate such transactions; and

- other expected and unexpected risks with pursuing acquisitions, including litigation or regulatory exposure, unfavorable accounting treatment, increases in taxes due, a loss of anticipated tax benefits, costs or delays to obtain governmental approvals, diversion of management's attention or other resources from our existing business and other adverse effects on our business, results of operations or financial condition.

When we acquire companies or other businesses, we face the risk that creators of the acquired companies or businesses may not migrate to our platform or may choose to decrease their level of usage of our platform post migration. We have previously experienced customer loss in the process of integrating and migrating acquired companies for a variety of reasons. The pace and success rate of migration may be influenced by many factors, including the pace and quality of product development, our ability to operationally support the migrating creators and our adoption of business practices outside of our platform that matter to the creator.

Moreover, we rely heavily on the representations and warranties and related indemnities . . . .

Our failure to address these risks or other problems encountered in connection with past or future acquisitions, investments and significant commercial arrangements could cause us to fail to realize the anticipated benefits of such transactions, incur unanticipated liabilities and harm our business, results of operations and financial condition.

41.     Under "Quarterly Trends," the Registration Statement noted the "positive impact" of the Ticketfly acquisition:

Our quarterly revenue increased for all periods presented, except the second quarter of 2018, primarily due to increases in paid ticket volume, both organically and through our acquisitions. Historically, we have experienced a higher increase in sequential organic net revenue growth in the first quarter of a year compared to the sequential organic net revenue growth in other quarters of that year. *We acquired ticketscript in the first quarter of 2017 and Ticketfly in the third quarter of 2017, which had a positive impact on our net revenue growth in each of those quarters.* The decrease in quarterly net revenue in the second quarter of 2018 was a result of the contra revenue amount of $6.3 million which we recognized related to the Ticketfly incident [i.e. when the Ticketfly platform was disabled following a data breach].

42.     The Registration Statement was materially false and misleading and omitted to state: (1) that the Company's migration of customers from Ticketfly to Eventbrite was progressing slower than expected; (2) that, as a result, the Ticketfly integration would take longer than expected; (3) that, as a result, the Company's revenue and growth would be negatively impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Materially False and Misleading**
**Statements Issued During the Class Period**

43.    The Class Period begins on September 20, 2018. On that day, the Company completed its IPO.

44.    Then, on November 12, 2018, the Company announced its third quarter 2018 financial results, disclosing the following in a letter to shareholders:

• Revenues grew by 45.1% to $73.6 million in the third quarter, with both Eventbrite platform growth and acquired businesses contributing to the overall increase in total sales.

• Paid tickets grew by 32.2% to 23.9 million in the third quarter.

• Gross profit increased by 41.7% to $42.2 million. Gross margin was 57.2%, down 140 basis points year-over-year due to amortization related to the Ticketfly platform.

• Operating loss was ($13.1) million in the third quarter compared to an operating loss of ($10.4) million in the same period last year. Operating loss was negatively impacted by increased stock-based compensation expense in the quarter related to our initial public offering.

• Adjusted EBITDA was $11.2 million, up from $1.0 million in the same period last year.

* * *

Our strategy is to operate a single technical platform globally, which means that we work to migrate customers from acquired platforms to the Eventbrite platform. This migration process has historically taken 12 to 24 months, over which the Eventbrite team engages with customers to support this process. In general, we strive to retain the majority of net revenue while migrating customers in order to realize the important synergies of operating a single technical platform. Migration efforts have typically resulted in modest customer losses which tend to cluster around the time we deprecate the acquired platform.

45.    On November 14, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, which reaffirmed the previously reported third quarter 2018 financial results.

46.    The above statements identified in ¶¶43-45 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.    Specifically, Defendants failed to disclose to investors: (1) that the Company's migration of customers from Ticketfly to Eventbrite was progressing slower than expected; (2) that, as a result, the Ticketfly integration would take longer than expected; (3) that, as a result, the

Company's revenue and growth would be negatively impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Truth is Revealed

47.     On March 7, 2019, post-market, the Company issued a letter to shareholders that announced its fourth quarter 2018 financial results and provided 2019 guidance. Therein, the Company indicated that its growth rate would be negatively impacted while it integrated Ticketfly:

> Since we last updated you, we have made substantial progress toward integration and migration of Ticketfly creators. We made a deliberate decision when we acquired the company to integrate it into the Eventbrite platform, which made for a more complex and time-consuming integration process. During this process, our team has been focused on migrating existing customers, which creates tremendous value for our business but does not result in near-term revenue growth. We believe in this strategy because it will enable us to build the leading, global independent music platform.
>
> We anticipate finishing the last integration work to support creator migration in the second quarter of 2019. In the second half of the year we aim to complete creator migration and sunset the Ticketfly platform. ***Therefore, we believe that growth rates of our North American music business will begin to accelerate by early 2020.***

(Emphasis added.)

48.     The Company also stated that migration headwinds would offset "continued growth self sign-on and international for the first quarter of 2019." The Company forecast first quarter 2019 revenue between $80.0 and $84.0 million, but analysts had expected $91 million based on the Company's prior statements.

49.     On this news, the Company's share price fell $7.96 per share, or over 24%, to close at $24.46 per share on March 8, 2019, on unusually high trading volume.

### CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Eventbrite securities: a) issued in connection with the Company's IPO; and/or b) between September 20, 2018 and March 7, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the

Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Eventbrite's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Eventbrite Class A common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Eventbrite or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Eventbrite; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

55. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

56. The market for Eventbrite's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Eventbrite's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Eventbrite's securities relying upon the integrity of the market price of the Company's securities and market information relating to Eventbrite, and have been damaged thereby.

57. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Eventbrite's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Eventbrite's business, operations, and prospects as alleged herein.

58. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eventbrite's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and

other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

59.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

60.    During the Class Period, Plaintiff and the Class purchased Eventbrite's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

61.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Eventbrite, their control over, and/or receipt and/or modification of Eventbrite's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Eventbrite, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

62.    The market for Eventbrite's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Eventbrite's securities traded at artificially inflated prices during the Class Period.  On September 28, 2018, the Company's share price closed at a Class Period high of $37.97 per share.

1    Plaintiff and other members of the Class purchased or otherwise acquired the Company's

2    securities relying upon the integrity of the market price of Eventbrite's securities and market

3    information relating to Eventbrite, and have been damaged thereby.

4           63.    During the Class Period, the artificial inflation of Eventbrite's shares was caused by

5    the material misrepresentations and/or omissions particularized in this Complaint causing the

6    damages sustained by Plaintiff and other members of the Class.  As described herein, during the

7    Class Period, Defendants made or caused to be made a series of materially false and/or misleading

8    statements about Eventbrite's business, prospects, and operations.  These material misstatements

9    and/or omissions created an unrealistically positive assessment of Eventbrite and its business,

10   operations, and prospects, thus causing the price of the Company's securities to be artificially

11   inflated at all relevant times, and when disclosed, negatively affected the value of the Company

12   shares.  Defendants' materially false and/or misleading statements during the Class Period resulted

13   in Plaintiff and other members of the Class purchasing the Company's securities at such

14   artificially inflated prices, and each of them has been damaged as a result.

15          64.    At all relevant times, the market for Eventbrite's securities was an efficient market

16   for the following reasons, among others:

17          (a)    Eventbrite shares met the requirements for listing, and was listed and actively

18   traded on the NYSE, a highly efficient and automated market;

19          (b)    As a regulated issuer, Eventbrite filed periodic public reports with the SEC and/or

20   the NYSE;

21          (c)    Eventbrite regularly communicated with public investors via established market

22   communication mechanisms, including through regular dissemination of press releases on the

23   national circuits of major newswire services and through other wide-ranging public disclosures,

24   such as communications with the financial press and other similar reporting services; and/or

25          (d)    Eventbrite was followed by securities analysts employed by brokerage firms who

26   wrote reports about the Company, and these reports were distributed to the sales force and certain

27   customers of their respective brokerage firms.  Each of these reports was publicly available and

28   entered the public marketplace.

65.     As a result of the foregoing, the market for Eventbrite's securities promptly digested current information regarding Eventbrite from all publicly available sources and reflected such information in Eventbrite's share price. Under these circumstances, all purchasers of Eventbrite's securities during the Class Period suffered similar injury through their purchase of Eventbrite's securities at artificially inflated prices and a presumption of reliance applies.

66.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

67.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of

Eventbrite who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 11 of the Securities Act**
**(Against All Defendants)**

68.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

69.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

70.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

71.    Eventbrite is the registrant for the IPO.   The Defendants named herein were responsible for the contents and dissemination of the Registration Statements.

72.    As issuer of the shares, Eventbrite is strictly liable to Plaintiff and the Class for the misstatements and omissions.

73.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.

74.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

75.    Plaintiff acquired Eventbrite shares pursuant and/or traceable to the Registration Statement for the IPO.

76.    Plaintiff and the Class have sustained damages.   The value of Eventbrite Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

**SECOND CLAIM**
**Violation of Section 15 of the Securities Act**
**(Against the Securities Act Individual Defendants)**

77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

78.     This count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

79.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Eventbrite within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Eventbrite to engage in the acts described herein.

80.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

81.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

### THIRD CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against Eventbrite and the Individual Defendants)

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Eventbrite's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

84.     the Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's

securities in an effort to maintain artificially high market prices for Eventbrite's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

85.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Eventbrite's financial well-being and prospects, as specified herein.

86.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eventbrite's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Eventbrite  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

87.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

88.     The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Eventbrite's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

89.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Eventbrite's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the

Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Eventbrite's securities during the Class Period at artificially high prices and were damaged thereby.

90.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Eventbrite was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Eventbrite  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

91.     By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### FOURTH CLAIM
#### Violation of Section 20(a) of the Exchange Act
#### (Against the Individual Defendants)

93.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of Eventbrite within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

95.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

96.     As set forth above, Eventbrite and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

1    this action, including counsel fees and expert fees; and

2          (d)     Such other and further relief as the Court may deem just and proper.

3    **<u>JURY TRIAL DEMANDED</u>**

4        Plaintiff hereby demands a trial by jury.

5

6    Dated: April 15, 2019              **GLANCY PRONGAY & MURRAY LLP**

7

8                        By:  *s/ Lesley F. Portnoy*
                    Lionel Z. Glancy

9                        Robert V. Prongay
                    Lesley F. Portnoy

10                       Charles H. Linehan
                    Pavithra Rajesh

11                       1925 Century Park East, Suite 2100
                    Los Angeles, CA 90067

12                       Telephone:  (310) 201-9150
                    Facsimile:   (310) 201-9160

13                       *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: FA7A3450-AE11-4625-B5C5-7E1EB2CA8DD5

# SWORN CERTIFICATION OF PLAINTIFF

## EVENTBRITE INC. SECURITIES LITIGATION

I, Michael Gomes individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Eventbrite, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Eventbrite, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

4/12/2019
_____
Date

DocuSigned by:

*Michael Gomes*
E64F92FF177E468...
_____
Michael Gomes

**Michael Gomes' Transactions in Eventbrite, Inc. (EB)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 9/20/2018 | Bought | 183 | $37.1300 |