ROBERT V. PRONGAY (#270796)
KARA M. WOLKE (#241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

-and-

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*
*and the proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE EVENTBRITE INC. SECURITIES LITIGATION | Master File No. 5:19-cv-02019-EJD |
| | **CLASS ACTION** |
| | **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To: All Actions | Hearing Date:  October 29, 2020<br>Time:  9:00 a.m.<br>Location:  Courtroom 4—5th Floor<br>Judge:  Hon. Edward J. Davila |

# TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT ........................................................................................................viii

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD: ......................................................................................viii

STATEMENT OF ISSUES TO BE DECIDED ...........................................................ix

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ........................ 1

III.    THE SETTLEMENT ..................................................................................... 3

        A.      The Settlement Terms ..................................................................... 3

        B.      The Plan of Allocation .................................................................... 4

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 5

        A.      Standards for Preliminary Approval................................................... 5

        B.      The Settlement is Fair, Reasonable, and Adequate.............................. 6

                1.      The Settlement Results From Serious, Informed, Non-Collusive Negotiations .......................................................................... 6

                2.      The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including the Representative Plaintiffs ........................... 7

                3.      The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.................................... 7

                4.      Risk of Maintaining Class Action Status Throughout Trial..................... 10

                5.      Risks Regarding Eventbrite's Future Prospects ........................................ 10

                6.      The Amount Offered in Settlement ............................................................ 10

                7.      The Extent of Discovery and the Stage of Proceedings ............................ 12

V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ....................................................................................................... 13

        A.      The Settlement Class Is Numerous Enough to Warrant Certification ....................... 14

        B.      There Are Substantial Common Questions of Law and Fact...................................... 14

        C.      Plaintiffs' Claims Are Typical of Those of Other Settlement Class Members.......... 15

        D.      Plaintiffs and Lead Counsel Adequately Represent the Settlement Class ................ 15

E.      The Predominance and Superiority Requirements Are Satisfied ................................ 16

VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................................... 17

VII.   THE  NOTICE  PROGRAM  SATISFIES  RULE  23,  DUE  PROCESS,  AND  THE PSLRA ............................................................................................................................... 17

A.      The Method of Providing Notice is Adequate ............................................. 17

B.      The Content of the Notice Is Adequate ........................................................ 18

VIII.  THE    INTENDED    REQUEST    FOR    ATTORNEYS'    FEES,    LITIGATION EXPENSES, AND PLAINTIFFS' EXPENSES .................................................... 20

IX.    THE PROPOSED CLAIMS ADMINISTRATOR ........................................................ 22

X.     PROPOSED SCHEDULE OF EVENTS ........................................................................ 23

XI.    CONCLUSION ................................................................................................................. 24

1

2

3

# **TABLE OF AUTHORITIES**

CASES

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................. 5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (19977). ................................................................................................. 16

*Ang v. Bimbo Bakeries USA, Inc.*,
   2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) ............................................................... 5

*Barani v. Wells Fargo Bank, N.A.*,
   2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ................................................................ 18

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...................................................................................... 13

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 3957746 (N.D. Cal. June 28, 2015) ............................................................... 5

*Buccellato v. AT & T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ............................................................. 21

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10 2019) .............................................................. 22

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................. 9, 19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................... 17

*Craft v. Cty, of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...................................................................... 21

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...................................................................................... 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 13, 14

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................... 7, 10

28

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................... 14

*Hopkins v. Stryker Sales Corp.*,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................ 21

*Huberman v. Tag-It Pacific Inc.*,
   314 Fed. App'x 59 (9th Cir. 2009) ........................................................................ 17

*IBEW v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................... 11

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................... 13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 18

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................... 18

*In re Audioeye, Inc., Sec. Litig.*,
   2017 WL 5514690 (D. Ariz. May 8, 2017) ............................................................ 20

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ........................................................... 15

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ........................................................................... 13

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................... 15

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) .......................................................... 8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................... 8, 22

*In re K12 Inc. Sec. Litig.*,
   2019 WL 3766420 (N.D. Cal. July 10, 2019) ......................................................... 18

*In re LJ Int'l Inc. Sec. Litig.*,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ....................................................... 11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................ 6, 7, 13, 20

*In re Mut. Funds Inv. Litig.*,
   2010 WL 2342413 (D. Md. May 19, 2010)........................................................... 18

*In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*,
   2017 WL 6040065 (N.D. Cal., 2017) .................................................................. 21

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 6

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................ 10

*In re Saxton, Inc. Sec. Litig*,
   156 Fed.Appx. 917, 2005 WL 3271342 (9th Cir. Dec. 2, 2005).......................... 8

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................... 5

*In re Tableware Antitrust Litig*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 10

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018) ...................................................................... 14

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................... 9

*In re Verisign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)..................................................... 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................ 8

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)................................................................. 8

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................... 10

*Jaffe v. Morgan Stanley & Co., Inc.*,
   2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ....................................................... 13

*Johnson v. US Auto Parts Network, Inc.*,
   2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ..................................................... 6

*Karam v. Corinthian Colleges Inc.*,
   2017 WL 4070889 (C.D. Cal. July 7, 2017)....................................................... 14

*Lumen v. Anderson*,
   280 F.R.D. 451 (W.D. Mo. 2012) ................................................................................. 16

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................................. 4

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 5, 7, 10

*Persky v. Turley*,
   1991 WL 329564 (D. Ariz. Dec. 20, 1991) ................................................................. 16

*Razilov v. Nationwide Mut. Ins. Co.*,
   2006 WL 3312024 (D. Or. Nov. 13, 2006) ............................................................. 22, 23

*Rodriquez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................................... 6

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............................................................. 20

*Rosenburg v. Int'l Bus. Machines Corp.*,
   2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ................................................................. 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................ 20

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
   2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ................................................................. 19

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .............................................................. 22

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 20

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................................. 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 21

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2006) ................................................................ 5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................................ 13, 14

1

<u>STATUTES</u>

2

15 U.S.C. §§ 77z-1(a)(4) ......................................................................................... 22

3

15 U.S.C. §§ 77z-1(a)(7) ......................................................................................... 19

4

15 U.S.C. §§ 78j(b) ................................................................................................... 1

5

28 U.S.C. §1715 ...................................................................................................... 18

6

28 U.S.C. § 1715(d) ................................................................................................ 24

7

8

<u>RULES</u>

9

Fed. R. Civ. P. 23 ............................................................................................. *passim*

10

<u>REGULATIONS</u>

11

17 C.F.R. § 240.10b-5 ............................................................................................... 2

12

<u>OTHER AUTHORITIES</u>

13

Newberg on Class Actions § 13:52 (2014) .............................................................. 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 24, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, Michael Gomes, Melvin Pastores, and Mohit Uppal ("Lead Plaintiffs" or the "Eventbrite Investor Group") and Named Plaintiff Bruce Bones (collectively, "Plaintiffs") will and hereby do move the Honorable Edward J. Davila, District Judge, located in Courtroom 4, 5th Floor, or by videoconference or telephonic conference, for entry of the [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement and exhibits thereto, dated as of July 29, 2020 (the "Stipulation");[1] (ii) preliminarily certifies the Settlement Class, appoints Plaintiffs as class representatives of the Settlement Class, and appoints Lead Counsel as class counsel for the Settlement Class; (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, should be approved.

In support of this Motion, Plaintiffs submit the following memorandum; the Joint Declaration, and exhibits thereto, including the Stipulation and further exhibits thereto; all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

This motion is made following the conference of counsel pursuant to Local Rule 1-5(n) which took place on August 6, 2020. Defendants' counsel have authorized Plaintiffs' counsel to represent that Defendants do not oppose this motion.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation. A copy of the Stipulation together with its exhibits is attached as Exhibit 1 to the Declaration of Kara M. Wolke and Laurence M. Rosen in Support of Preliminary Approval of Settlement ("Joint Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court would likely approve the proposed $1.9 million cash settlement of this Action, thereby warranting entry of the Preliminary Approval Order and dissemination of notice to members of the proposed Settlement Class.

2. Whether the Settlement Class should be certified for purposes of the Settlement.

3. Whether Plaintiffs should be certified as Class Representatives of the Settlement Class for purposes of the Settlement.

4. Whether Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5. Whether the content and manner of dissemination of the proposed notices (*i.e.*, Postcard Notice, Long Notice, and Summary Notice) and Proof of Claim and Release form should be approved.

6. Whether the Court should set a hearing date for: (a) final approval of the proposed Settlement and the proposed Plan of Allocation; and (b) the application of Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   PRELIMINARY STATEMENT

3        The Parties have reached a proposed Settlement of this Action that resolves all claims

4   against Defendants in exchange for a cash payment of $1.9 million (the "Settlement Amount").

5        The proposed Settlement of $1.9 million is a fair, reasonable, and adequate result for the

6   Settlement Class.  The Settlement was reached after more than a year of contested litigation,

7   which included a comprehensive investigation by Lead Counsel before filing the 47-page

8   Consolidated Amended Class Action Complaint ("CAC"), and comprehensive briefing on

9   Defendants' motion to dismiss the CAC.  On April 28, 2020, the Court granted Defendants'

10  motion to dismiss in full, dismissing the Action with leave to amend.  Dkt. No. 59.  Among other

11  things, the Court held that Plaintiffs failed to allege a materially false or misleading statement

12  made in the Registration Statement or during the putative class period.  *Id.*  In addition, a

13  California state court dismissed the first and second amended complaints brought by Eventbrite,

14  Inc. ("Eventbrite" or the "Company") investors asserting similar claims, the latter of which

15  followed significant discovery.  Further dimming the prospects of any recovery, during litigation

16  the world was struck by the worst pandemic it suffered since 1918 – particularly bad news for a

17  company whose business is helping customers plan live events.

18       With claims against Eventbrite dismissed in state and federal court and the Company's

19  future uncertain, the prospect that Settlement Class Members would recover anything looked dim.

20  Yet, Lead Counsel nonetheless were able to negotiate the $1.9 million Settlement.  As a

21  percentage of alleged damages, the recovery, though lower than the median settlement in a

22  securities class action, will nonetheless prove meaningful for Settlement Class Members.  For

23  these reasons, as well as those set forth below and in the Joint Declaration, Plaintiffs respectfully

24  request that the Court preliminarily approve the Settlement, preliminarily certify the Settlement

25  Class, preliminarily approve the Plan of Allocation, and schedule a final approval hearing.

26  ### II.   SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

27       Plaintiffs assert claims on behalf of a putative class of investors under Sections 10(b) and

28  20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a),

and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as Sections 11 and 15 of the Securities Act of 1933, against Eventbrite, Julia Hartz, Randy Befumo, Andrew Dreskin, Katherine August-Dewilde, Roelof Botha, Kevin Hartz, Sean P. Moriarty, Lorrie M. Norrington, Helen Riley, Steffan C. Tomlinson, (collectively, "Eventbrite Defendants"), Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Allen & Company LLC, RBC Capital Markets, LLC, SunTrust Robinson Humphrey, Inc., and Stifel, Nicolaus & Company, Incorporated (collectively, "Underwriter Defendants," and together with the Everbrite Defendants, "Defendants").  Eventbrite trades on the New York Stock Exchange ("NYSE") under the ticker symbol "EB."

The two securities class actions that make up this consolidated case were filed in this District on April 4, 2019, *Gomes v. Eventbrite Inc.*, 5:19-cv-02019-EJD, and June 3, 2019, *Robinson v. Eventbrite Inc*, 3:19-cv-03045-SI.  Lead Plaintiffs timely moved for appointment, and the Court granted their motion on August 22, 2019.  On October 11, 2019, Lead Plaintiffs, joined by Mr. Bones, filed the CAC on behalf of a class of all persons and entities that purchased or otherwise acquired Eventbrite securities: (a) pursuant or traceable to Eventbrite's registration statement and prospectus issued in connection with the Company's September 20, 2018 initial public offering; or (b) between September 20, 2018 and May 1, 2019, inclusive.  Dkt. No. 40.

The Eventbrite Defendants timely moved to dismiss.  Dkt. Nos. 42-44.  The Underwriter Defendants joined that motion on December 11, 2019.  Dkt. No. 45.  Plaintiffs timely opposed.  Dkt. Nos. 50-52.  The Eventbrite Defendants replied.  Dkt. No. 53.  The Underwriter Defendants joined in the Eventbrite Defendants' reply in support of the motion to dismiss.  Dkt. No. 55.  On April 28, 2020, the Court granted Defendants' motion to dismiss with leave to amend.  Dkt. No. 59.  Plaintiffs then further researched and investigated their claims.

Certain Eventbrite investors had filed a securities class action in the San Mateo Superior Court.  The plaintiffs in that action, styled *In re EventBrite, Inc. Shareholder Litigation*, No. 19Civ02798, were not precluded from obtaining discovery as Plaintiffs here were.  They used the discovery to plead their second amended complaint, but on June 10, 2020, the court dismissed it in open court, as reflected in a later June 23, 2020 order.  *In re EventBrite, Inc. Shareholder Litigation*, No. 19Civ02798, Case Management Order #7 (San Mateo Sup. Ct. June 23, 2020).

The Parties had begun settlement discussions even before Defendants' motion to dismiss was decided. The negotiations accelerated after the dismissal, and the Parties reached an agreement in principle on June 17, 2020. Thereafter, the Parties exchanged multiple drafts of the documents memorializing the Settlement, ultimately executing the Stipulation on July 29, 2020.

## III.   THE SETTLEMENT

### A.   The Settlement Terms

The Settlement provides that Eventbrite will pay or cause to be paid $1.9 million in cash into an interest-bearing escrow account for the benefit of the Settlement Class. The Settlement Amount, plus accrued interest, and after deduction of (i) any taxes, (ii) Notice and Administration Costs, and (iii) any Court-awarded attorneys' fees and litigation expenses (which may include reimbursement to Plaintiffs for their time and expenses incurred in representing the Settlement Class) is the "Net Settlement Fund." The Net Settlement Fund will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with the proposed Plan of Allocation.

The Settlement Class consists of:

> All persons and entities that purchased or otherwise acquired Eventbrite, Inc. securities: (a) pursuant or traceable to Eventbrite's registration statement and prospectus ("Registration Statement") issued in connection with the Company's September 20, 2018 initial public offering ("IPO"); *or* (b) between September 20, 2018 and May 1, 2019, both dates inclusive (the "Class Period"), and were damaged thereby. Excluded from the Settlement Class are Defendants, Eventbrite's officers and directors, their immediate family members, and entities in which such excluded person hold a controlling interest. Also excluded from the Settlement Class is any Person who timely and validly seeks exclusion from the Settlement Class. Notwithstanding any aforementioned exclusions from the definition of "Settlement Class," Investment Vehicles shall not be excluded from the Settlement Class.

Stipulation, ¶33.[2]

---

[2] The Stipulation clarifies that Investment Vehicles are not excluded from the proposed settlement class. The CAC did not address this issue in its class definition. Investment Vehicles are investment companies, separately managed accounts, or pooled investment funds (such as mutual funds, hedge funds, or ETFs) in which any Underwriter Defendant may have a direct or indirect interest or act as an advisor; but not a majority beneficial interest. Joint Decl. ¶¶13-15.

In exchange for the Settlement Amount, Settlement Class Members will release the "Released Claims," which are:

> any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, whether known or Unknown Claims … , whether suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, whether arising under federal, state, common or foreign law or regulation upon any theory of law or equity now existing or coming into existence in the future, whether class or individual in nature, that arise out of or relate in any way to **both** (i) the purchase, sale, or holding of Eventbrite securities pursuant or traceable to Eventbrite's registration statement and prospectus … issued in connection with the Company's September 20, 2018 initial public offering … **or** were otherwise purchased, sold, or held during the Class Period, **and** (ii) the allegations, transactions, acts, facts, events, circumstances, statements, or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Settlement Class in the Action or in any other action in any court or forum which relate to the subject matter of this Action.  Released Claims do not include derivative claims on behalf of Eventbrite, except that neither Plaintiffs nor their counsel will bring any derivative claims related to any allegations, transactions, acts, facts, events, circumstances or wrongdoing alleged in the Action.  Defendants will release Plaintiffs and their counsel for all Released Defendants' Claims arising from the Action.

Stipulation, ¶26.

The release of claims, including Unknown Claims, that are related to the purchase of Eventbrite securities pursuant to the Registration Statement or during the Class Period and that relate to the underlying facts of the Action is appropriate.  *See, e.g.*, *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) (approving settlement agreement in securities class action with similar releases to those negotiated here).

## B.   The Plan of Allocation

The proposed Plan of Allocation, set forth in the Long Notice, was drafted with help from Plaintiffs' consultant and is comparable to plans of allocation approved in many other securities class actions.  The Plan of Allocation allocates the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on the amount of each Authorized Claimant's Recognized Loss compared to the total Recognized Loss of all Authorized Claimants.  *See* Stipulation, ¶63; Long Notice (Ex. A-1 to the Stipulation) at pp. 5-6.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Standards for Preliminary Approval

As a matter of public policy, courts encourage parties to complex class actions to resolve cases through settlement.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

Rule 23(e) requires court approval for any settlement of a class action.  Such approval involves a two-step process by which the Court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final approval is warranted.  *See* Rule 23(e); *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'"  *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quotation omitted).  Courts grant preliminary approval where the settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies."  *Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28, 2020).

In granting preliminary approval of a settlement and ordering notice, the Court only needs to determine that the settlement is "*potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  In determining whether the settlement "falls within the range of possible approval", the Court should consider the following factors when determining whether a settlement should be preliminarily approved: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

1   and the stage of the proceedings; (6) the experience and views of counsel; and (7) the lack of

2   collusion between the parties.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.

3   2000).  The Court should be mindful in balancing these considerations here because "[s]ecurities

4   class action litigation is notably difficult and notoriously uncertain."  *Trief v. Dun & Bradstreet*

5   *Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (internal quotations and citation omitted); *see also*

6   Newberg on Class Actions § 13:52 (2014) (5th ed.) (same); *Johnson v. US Auto Parts Network,*

7   *Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("[A] number of courts have commented

8   on the difficulty and uncertainty of maintaining a securities class action.") (collecting cases).

9        As shown below, the Settlement meets the criteria for preliminary approval.

10       **B.      The Settlement is Fair, Reasonable, and Adequate**

11            **1.      The Settlement Results From Serious, Informed, Non-Collusive**
                     **Negotiations**

12       In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the

13   product of an arms-length, non-collusive, negotiated resolution."  *Rodriquez v. W. Publ'g Corp.*,

14   563 F.3d 948, 965 (9th Cir. 2009).  Indeed, "[c]ourts have afforded a presumption of fairness and

15   reasonableness of a settlement agreement where that agreement was the product of non-collusive,

16   arms' length negotiations conducted by capable and experienced counsel."  *In re Netflix Privacy*

17   *Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (Davila, J.).

18       Lead Counsel began settlement discussions before the Court dismissed the CAC.  The

19   negotiations accelerated after the Court's dismissal order even as Plaintiffs further investigated the

20   claims against Defendants.  During negotiations, Settlement Class Members' chances of

21   recovering anything diminished further when the state court dismissed the state plaintiffs' second

22   amended complaint, which had relied on discovery.

23       Throughout, Lead Counsel zealously negotiated for the best possible result for Settlement

24   Class Members.  The Parties exchanged several series of offers and discussed the merits of the

25   case at length.  The Parties realistically assessed their options and the likelihood of success, and

26   each determined that the Settlement was in their best interests.

27        Further, Lead Counsel have extensive experience in securities litigation and have obtained

28   a thorough understanding of the merits and risks of the Action.  Glancy Prongay Murray and The

Rosen Law Firm have each negotiated hundreds of millions of dollars of settlements.  *See* Joint Decl. Exs. 2 & 3 (firm résumés).  Defendants were represented by Cooley LLP and Morrison & Foerster LLP, whose reputations shine bright enough that Plaintiffs need not burnish them here.

Because the Settlement stems from serious, informed, and non-collusive negotiations among experienced counsel, preliminary approval is warranted.

### 2. The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including the Representative Plaintiffs

The Settlement does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to the representative Plaintiffs.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018).  The Plan of Allocation described in the proposed Long Notice to the Settlement Class provides for distribution of the Net Settlement Fund to Settlement Class Members who have compensable losses from their Class Period transactions in Eventbrite common stock.  *See* Stipulation Ex. A-1 (Long Notice), pp. 6-8.  The Plan of Allocation sets out a mathematical formula prepared by an expert in consultation with Lead Counsel that will govern exactly how much each Settlement Class Member receives from the Settlement.  This method ensures that Settlement Class Members' recoveries reflect their proportionate losses sustained as a result of the wrongdoing alleged in the Action.

As with every other Settlement Class Member, the Plan of Allocation will dictate the amount of recovery under the Settlement for each of the named Plaintiffs.[3]

### 3. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing whether to grant preliminary approval, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery.  *Mego*, 213 F.3d at 458, 459 (factors one and two); *Officers for Justice*, 688 F.2d at 625.

Here, the risks of continued litigation were considerable. The Private Securities Litigation

---

[3] Separate from their participation in the Settlement under the Plan of Allocation, Plaintiffs will seek reimbursement of costs (including for time spent dedicated to the Action) incurred as a result of their representation of the Settlement Class, as authorized by the PSLRA.  *See* Sec. VIII, *infra*.

Reform Act ("PSLRA") has made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The Court has already dismissed Plaintiffs' CAC for failing to allege that Defendants made false statements. *In re Eventbrite, Inc. Sec. Litig.*, No. 5:18-CV-02019-EJD, 2020 WL 2042078, at *10 (N.D. Cal. Apr. 28, 2020). "The court needs to look no further than its own order dismissing the shareholder...litigation to assess the risks involved." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005).

Plaintiffs faced a real risk that they could not cure the deficiencies the Court through amendment. The Court did not reach the heavily-disputed question of whether Defendants made their statements with scienter, which is often the toughest part of pleading a securities case. *See In re Saxton, Inc. Sec. Litig,*, 156 Fed.Appx. 917, 920, 2005 WL 3271342, at *2 (9th Cir. Dec. 2, 2005) (affirming dismissal based on failure to adequately plead scienter). Nor did it address whether, as Defendants argued, Plaintiffs failed to plead loss causation as to the second of the two corrective disclosures alleged in the CAC. So even if Plaintiffs addressed the deficiencies the Court found, they still might not survive Defendants' second motions to dismiss.

If Plaintiffs survived Defendants' motion to dismiss, they would still have to prove their case. Here, the signs are not encouraging. Other Eventbrite investors sued in state court and alleged similar theories. Not subject to the PSLRA, the state court plaintiffs were allowed to take discovery. Though those plaintiffs based their second amended complaint on the discovery they obtained, the court nonetheless dismissed it. *In re Eventbrite, Inc. Shareholder Litig.*, No. 19Civ02798, Case Management Order #7 (San Mateo Sup. Ct. June 23, 2020). Those investors' inability to even state a claim with the benefit of discovery suggests that even if Plaintiffs survived Defendants' motions to dismiss, they might not survive Defendants' motions for summary judgment or win at trial. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also

1    recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

2    Proving loss causation and damages, which requires expert testimony, also would be risky.

3    *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would

4    be complex and difficult.  Moreover, even if the jury agreed to impose liability, the trial would

5    likely involve a confusing 'battle of the experts' over damages.").  Defendants revealed the

6    allegedly botched Ticketfly migration on March 7, 2019.  Defendants argue that the March 7

7    disclosure released any alleged artificial inflation relating to the Ticketfly integration.  While

8    Plaintiffs argue that the market learned more details of the scope of the Ticketfly problems on May

9    1, 2019, when Eventbrite announced its next quarterly results, Defendants' argument is not

10   specious.  If the Court or jury accepted the argument that the May 1 disclosure could not be

11   corrective because any misstatement had already been corrected on March 7, the alleged Section

12   10(b) damages would fall by approximately one-half.  Joint Decl. ¶21.

13   Plaintiffs and Lead Counsel also considered the likely further expense and duration of the

14   Action, which both weighed in favor of Settlement.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361

15   F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further

16   litigation as factors supporting final approval of settlement).  Continued litigation would be long,

17   complex, and costly—costs and delays that the Settlement Class would have to bear.  Plaintiffs

18   allege that Defendants failed to disclose missteps in operations that accounted for a large part of

19   Eventbrite's total business.  The alleged missteps took place over a year and a half ago.  With

20   allegations that sweep so broadly, discovery was bound to involve hundreds of thousands, if not

21   millions, of pages of documents.

22   Further, the Parties would have to take depositions.  The eighteen named Defendants and

23   four named Plaintiffs already account for twenty-two depositions.  Beyond those, Plaintiffs would

24   need to take the depositions of many Eventbrite insiders, employees of certain of the underwriter

25   defendants, and likely employees of the funds who had invested in Eventbrite before the IPO.  The

26   Parties would also each retain financial experts, capital markets experts, and several subject-matter

27   experts.  Such expert discovery is complex and expensive.  And trials are innately costly and risky.

28   In sum, continued litigation would be risky and uncertain, and if Plaintiffs were even able

to proceed past the pleading stage, complex, costly, and lengthy.  By contrast, the $1.9 million Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk of continued litigation.

### 4.      Risk of Maintaining Class Action Status Throughout Trial

Because Eventbrite common stock was traded on the NYSE, the risk that Plaintiffs would not be able to maintain a certify a class through trial is modest.  Still, courts sometimes deny class certification to putative classes of investors who purchased NYSE-traded stock, and there is no guarantee that the law would stay the same while this case was litigated through trial.  "While this may not be a particular weighty factor, on balance it somewhat favors approval of the proposed Settlement."  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

### 5.      Risks Regarding Eventbrite's Future Prospects

Even as the Parties are litigating this case, the United States is suffering from the most serious pandemic it has faced in a century.  In-person events are discouraged and, in many circumstances, illegal.  Yet Eventbrite's business is helping customers organize in-person events.

Further, Eventbrite makes most of its money from precisely the kinds of large-scale events that the pandemic makes most dangerous, such as large music festivals, packed concert halls, and congested races.  With no guarantee when, or if, things will return to normal, Eventbrite's future prospects are uncertain.

### 6.      The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'"  *Hefler*, 2018 WL 4207245, at *9 (quoting *Tableware*, 484 F. Supp. 2d at 1080).  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  An evaluation of the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*,

1   688 F.2d at 624 (citation omitted).

2         As discussed above, the risks of continued litigation were particularly high in the Action.

3   Thus, when viewed in relation to such risks, where it is highly uncertain whether this case could

4   even proceed past the pleading stage, the $1.9 million Settlement Amount is adequate.   It is

5   certainly well within the range of reasonableness under the circumstances.   Indeed, the $1.9

6   million recovery represents approximately 5.7% of Plaintiffs *maximum* estimated Section 11

7   damages of $33.5 million,[4] and approximately 1.6% of Plaintiffs estimated *maximum* Section

8   10(b) damages of $121.9 million.  Joint Decl. ¶21.  These estimates constitute Plaintiffs' best case

9   scenario.  And that best case scenario is based on a number of uncertain assumptions, including

10  that: (i) Plaintiffs would overcome the significant pleading hurdles present in this Action in light

11  of the Court's dismissal; (ii) the Court would certify the entire class period requested; (iii)

12  Plaintiffs would survive summary judgment motions on all elements; (iv) Plaintiffs would succeed

13  in proving liability to a jury; (v) the Court and jury accepted Plaintiff's damages theory, including

14  for Plaintiffs' Section 10(b) claim, proof of loss causation as to each of the stock price drops

15  alleged in this case; and (vi) Eventbrite survived long enough to pay any judgment.  Anything less

16  than a complete victory on any aspect of these assumptions would decrease recoverable damages,

17  and may lead to no recovery at all.

18        Thus, in context, the percentage recovery of 5.7% for Section 11 damages and a range of

19  1.6% to 3% for Section 10(b) damages is reasonable.[5]  *In re LJ Int'l Inc. Sec. Litig.*, 2009 WL

20  10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities class action settlement where

21  recovery was 4.5% of maximum damages); *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at

22  *3 (D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was 3.5%

23  of maximum damages and noting "this amount is within the median recovery in securities class

24  _____

25  [4] The estimated aggregate Section 11 damages are based on the first suit filing date of April 15,
    2019, and includes damages for IPO direct purchasers (approximately $5 million) and aftermarket
26  purchasers during the period through May 1, 2019, for whom it is assumed would be able to prove
    their shares were purchased pursuant or traceable to the IPO.

27  [5] As discussed above, if the Court or jury accepted Defendants' argument that the May 1
    disclosure could not be corrective because any misstatement had already been corrected on March
28  7, the alleged Section 10(b) damages would fall by approximately one-half.  Joint Decl. ¶21.

actions settled in the last few years"). This is especially true given that the Settlement was obtained only after the Court dismissed the CAC and rejected Plaintiffs' theory of falsity.

### 7.       The Extent of Discovery and the Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before settling. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (commenting that formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement" and noting that the "extensive review of discovery materials indicates that the [Plaintiffs] had sufficient information to make an informed decision about the Settlement") (quotation omitted).

Lead Counsel extensively investigated the claims asserted here, including conducting: (i) a detailed review of Eventbrite's Securities and Exchange Commission filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants before, during, and after the Settlement Class Period; (ii) review and analysis of publicly available materials, court filings, reports, announcements, news articles, and research reports by securities and financial analysts concerning Eventbrite; (iii) economic analyses of stock price movement and pricing data; and (iv) through a private investigator, interviews with many former employees and other third parties. As part of this investigation, Lead Counsel also consulted with experts on issues of loss causation and damages.

In drafting the complaints and opposing Defendants' motion to dismiss, Lead Counsel also engaged in extensive legal research, which helped to evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of the claims asserted in this Action. After the Court dismissed the CAC, Lead Counsel also further researched and investigated the case to determine whether amendments would be viable before agreeing to the Settlement.

This extensive analysis enabled Lead Counsel to make an informed assessment of the strengths and weaknesses of this Action, and to make a determination on behalf of the Settlement Class about whether to settle. The Parties' settlement negotiations further informed Lead Counsel about the strengths and weaknesses of the putative class's claims, and Defendants' defenses to

1   those claims.  As a result, the Parties and their counsel have a sufficient basis to make informed

2   decisions about the relative merits and weakness of this Action and the fairness of the Settlement.

3   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19,

4   2000) (affirming district court's approval of $1.725 million settlement where no discovery took

5   place, noting "the district court's conclusion that the Plaintiffs had sufficient information to make

6   an informed decision about the Settlement is not clearly erroneous.").

7   **V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**[6]

8        At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement

9   on behalf of the Settlement Class.  Thus, it is appropriate for the Court to now consider, at

10   preliminary approval and solely for purpose of the Settlement, whether the certification of the

11   Settlement Class appears to be appropriate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

12   Cir. 1998); *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).

13   Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality;

14   (iii) typicality; (iv) adequacy of representation.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

15   F.3d 1168, 1172 (9th Cir. 2010).  In addition, the court must find that at least one of the three

16   conditions of Rule 23(b) is satisfied.  *Id.*  Under subsection (b)(3), the Court must find that the

17   questions of law or fact common to the members of the class predominate over any questions

18   affecting only individual members and that a class action is superior to other available methods for

19   the fair and efficient adjudication of the controversy.  *Id.*; *Jaffe*, 2008 WL 346417, at *7.

20        The Ninth Circuit and many district courts within it have held that securities fraud actions

21   are generally amenable to class action treatment.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-

22   03 (9th Cir. 1975).  "[T]he Ninth Circuit and courts in this district hold a liberal view of class

23   actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D.

24   Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule

25   23 is . . . liberally construed in a securities fraud context because class actions are particularly

26   effective in serving as private policing weapons against corporate wrongdoing.'") (citation

27   omitted); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005)

28

---

[6] The Settlement Class is defined at Sec. III.A, *supra*, and ¶33 of the Stipulation.

("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

This Action satisfies all the factors for certification of a class.  Defendants have stipulated and agreed "for purposes of the Settlement to certification of the Action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Settlement Class; (b) the appointment of Plaintiffs as Class Representatives for the Settlement Class; and (c) the appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Federal Rule of Civil Procedure 23(g)." *See* Stipulation, ¶40.

### A.     The Settlement Class Is Numerous Enough to Warrant Certification

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable. Eventbrite common stock was traded on the NYSE.  Courts routinely find that the trading of stock on a national exchange supports class certification.  *See e.g., In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange.") (citation omitted); *Karam v. Corinthian Colleges Inc.*, 2017 WL 4070889, at *2 (C.D. Cal. July 7, 2017) (numerosity satisfied because it was safe to "infer that well over 40 individuals purchased" stock during the class period where there existed over 86 million shares of stock and the average weekly trading volume was over 10 million shares.).   Potential Settlement Class Members likely number in the hundreds, if not thousands, located throughout the United States.  A group this large and geographically diverse supports class treatment.  *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011).

### B.     There Are Substantial Common Questions of Law and Fact

A proposed settlement class has sufficient commonality to justify certification where there are substantial questions of law and fact common to the class.  *See Wolin*, 617 F.3d at 1172.  Rule 23(a)(2) should be construed permissibly, so that "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon*, 150 F.3d at 1019.  There are common questions of law and fact where there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150

F.3d at 1019.

Common questions of fact and law here include: (a) whether Defendants violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder; and/or violated Sections 11 and 15 of the Securities Act; (b) whether Defendants made material misrepresentations or omissions, or materially misleading statements; (c) whether Defendants knowingly or recklessly disregarded that their statements and omissions were false and misleading; (d) whether the price of Eventbrite's common stock was artificially inflated as a result of Defendants' misrepresentations and/or omissions; and (e) whether and to what extent disclosure of the truth regarding Defendants' omissions and/or misrepresentations of material facts caused Settlement Class Members to suffer economic loss and damages.

### C.   Plaintiffs' Claims Are Typical of Those of Other Settlement Class Members

Like other Settlement Class Members, the representative Plaintiffs allege that they purchased Eventbrite's common stock during the Settlement Class Period and were damaged because of the conduct alleged in the CAC.  The other members of the Settlement Class were allegedly affected in the same way.

Similarly, the interest of the representative Plaintiffs in obtaining a fair, adequate and reasonable settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under the proposed Plan of Allocation, the named Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met.  *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members.  They are, therefore, typical of the class.").

### D.   Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

1    Plaintiffs have prosecuted this Action, including making themselves available to counsel to

2    discuss the case and strategy, reviewing the pleadings and orders filed in the Action, participating

3    in negotiations with Defendants through counsel, and approving the Settlement for the benefit of

4    all Settlement Class Members.   Moreover, Plaintiffs are represented by qualified counsel with

5    extensive experience in the prosecution of securities class actions.   *See* Joint Decl. Exs. 2 & 3

6    (firm résumés).   Thus, the requirements of Rule 23(a)(4) are met.

7    **E.      The Predominance and Superiority Requirements Are Satisfied**

8    Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law

9    or fact predominate over individual questions, and that a class action is superior to other available

10   methods for the fair and efficient adjudication of the controversy.   Here, the proposed Settlement

11   Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law

12   or fact common to the members of the Settlement Class predominate over any questions affecting

13   individual members.   Moreover, individual damages suffered by members of the Settlement Class

14   do not make it economical to prosecute separate actions in order to recover individual losses

15   sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods.*, 521

16   U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the

17   problem that small recoveries do not provide the incentive for any individual to bring a solo

18   action. . . . A class action solves this problem[.]").   As a result, a class action is superior to other

19   available methods for the fair and efficient adjudication of the controversy.

20   In securities claims, it is common for factual variations among shareholders related to

21   stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but

22   common questions of fact related to misrepresentation claims "will predominate over the

23   individual issues."   *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

24   Additionally, Plaintiffs may rely on the fraud-on-the-market presumption of reliance because

25   Eventbrite stock was actively traded in an efficient market, specifically Eventbrite common stock

26   traded on the NYSE, which is presumed to be efficient.   *See, e.g.*, *Lumen v. Anderson*, 280 F.R.D.

27   451, 459 (W.D. Mo. 2012) ("*Basic* itself recognized the NYSE as an efficient market.").   Because

28   the fraud-on-the-market presumption applies, Settlement Class Members need not prove

1  individual reliance, further supporting predominance.  *See Huberman v. Tag-It Pacific Inc.*, 314

2  Fed. App'x 59, 62-63 (9th Cir. 2009).

## VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

4        Lead Counsel also seeks preliminary approval of the Plan of Allocation of the Net

5  Settlement Fund.  *See* Long Notice (Ex. A-1 to the Stipulation), at pp. 6-8.  Assessment of a plan

6  of allocation in a class action under Rule 23 is governed by the same standards of review

7  applicable to the settlement as a whole—it must be fair and reasonable.  *Class Plaintiffs v. City of*

8  *Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  The objective of a plan of allocation is to provide an

9  equitable basis upon which to distribute the settlement fund among eligible class members.  An

10  allocation formula must be "rationally related to the relative strengths and weakness of the case."

11  *Rosenburg v. Int'l Bus. Machines Corp.*, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

12        Here, the Plan of Allocation equitably allocates the Net Settlement Fund among all Class

13  Members who submit a valid Claim Form.  The Plan of Allocation was developed by Lead

14  Counsel and a consultant.  An Authorized Claimant's recovery under the Plan of Allocation will

15  depend on many factors, including the number of valid claims filed by other Authorized Claimants

16  and how many shares of Eventbrite common stock the Authorized Claimant purchased, acquired,

17  or sold during the Settlement Class Period, and when that Claimant bought, acquired, or sold the

18  shares.  The Plan of Allocation will fairly and equitably distribute Net Settlement Fund among

19  Settlement Class Members who submit valid claims.  *See* Joint Decl. ¶¶22-24.

## VII.   THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA

### A.   The Method of Providing Notice is Adequate

22        Rule 23(e) provides that a class action will not be dismissed or compromised without the

23  approval of the court, and notice of the proposed dismissal or compromise must be given to all

24  members of the class in such manner as the court directs.  Here, the Parties propose to mail, by

25  first class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation) to all

26  Settlement Class Members who can be identified with reasonable effort, as well as brokerage

27  firms and other entities that regularly act as nominees for beneficial purchasers of stock.  At the

28  same time as the mailing of the Postcard Notice, copies of the Long Notice (Exhibit A-1 to the

Stipulation) and the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement (www.EventbriteSecuritiesSettlement.com), from which copies of the Long Notice and Claim Form can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail copies of the Long Notice and/or Claim Form. Finally, the Summary Notice will be published in *Investor's Business Daily* and transmitted once over the *GlobeNewswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed postcard directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases). Courts in the Ninth Circuit agree. *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (granting final approval of securities class action settlement after postcard notice); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving postcard and online notice in consumer class action).[7]

With an estimated mailing size of 40,000 (*see* Ex. 4 (Mulholland Decl.), ¶16), a full printed Long Notice and Claim Form sent to each potential Settlement Class Member would be too expensive given the size of the Settlement Amount. Thus, Plaintiffs respectfully submit that the combination of the mailed Postcard, published Summary Notice, and availability online of the Notice provides "the best notice that is practicable under the circumstances."

Defendants will provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 et seq. ("CAFA"), if required, at their own expense. Stipulation, ¶60.

**B.      The Content of the Notice Is Adequate**

As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation

---

[7] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

and/or the proposed attorneys' fees and expenses.  *See Stratton v. Glacier Ins. Adm'rs, Inc.*, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."); *see also, Churchill Village*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

The proposed notice program satisfies the requirements of Rule 23(c)(2) by setting forth in plain, easily understandable language: (i) the nature of the action (*see* Long Notice, pp. 6-8 ("What is this lawsuit about?"); Postcard Notice); (ii) the Settlement Class Definition (*see* Long Notice, p. 4 ("How do I know if I am part of the Settlement?"); Postcard Notice); (iii) a description of the claims at issue and the defenses to those claims (*see* Long Notice, pp. 3-4 9 ("What is this lawsuit about?" and "Why is there a Settlement?")); (iv) the ability of Settlement Class Members to enter an appearance through counsel (*see* Long Notice, pp. 10-11 ("Do I have a lawyer? Do I Have To Come To The Hearing?"); Postcard Notice); (v) the Settlement Class Member's ability to be excluded and the process for exclusion from the Settlement Class (*see* Long Notice, pp. 10 ("How do I tell the Court that I do not like the Settlement?"); Postcard Notice); (vi) the binding effect of a Class judgment (*see* Long Notice, pp. 10-12 ("What happens if I do nothing at all?"); Postcard Notice).

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Long Notice (*see* Notice, pp. 1-2); (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share (*see* Long Notice, p. 5 ("What does the Settlement provide?"); Postcard Notice); (iii) a statement of potential outcomes of the case (*see* Long Notice, p. 4 ("Why is there a Settlement?")); (iv) a statement of attorneys' fees or costs sought (*see* Long Notice, p. 10 ("How Will The Lawyers Be Paid?"); Postcard Notice); (v) the names, telephone numbers, and addresses of Plaintiffs' counsel (*see* Long Notice, p. 10 ("Do I have a lawyer in this case?")); and (vi) the reasons for settlement (*see* Long Notice, p. 4 ("Why is

there a Settlement?")).

Further, the notice program will provide clear information about the date, time, and location of the Settlement Hearing and the process for objecting to the Settlement or other relief to be requested by Plaintiffs and Lead Counsel. *See* Long Notice, pp. 9-10 (response to questions "How do I get out of the Settlement? How do I tell the Court that I do not like the Settlement?").

## VIII. THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFFS' EXPENSES

As explained in the Postcard Notice and Notice, Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Amount and reimbursement of litigation expenses not to exceed $50,000 plus interest earned thereon. Lead Counsel will provide much more detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 calendar days before the final Settlement Hearing. However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel may request is in line with the "benchmark" often referenced by the courts in the Ninth Circuit. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This Circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("In common fund cases such as this, we have established 25% of the common fund as the 'benchmark' award for attorney fees.").

Indeed, fees greater than the "benchmark" have been routinely granted in complex class actions such as this one. *See, e.g.*, *In re Sunrun Inc., Sec. Litig.*, Case No. 17-cv-02537, Dkt No. 123 (N.D. Cal. 2017) (approving 30% fee award of settlement of $2.5 million after Defendant's motion to dismiss was granted); *Mego*, 213 F.3d at 463 (affirming award of one-third of the total recovery); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (approving 33⅓ percent award of $1.525 million settlement fund after Defendants' motion to dismiss was briefed, but not decided); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating, "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'" *citing* 4

1  Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).  Accordingly,

2  Lead Counsel respectfully submit that a "25% benchmark award is presumptively reasonable"

3  under the circumstances.  *See In re National Collegiate Athletic Association Athletic Grant-in-Aid*

4  *Cap Antitrust Litigation*, 2017 WL 6040065, at *2 (N.D. Cal., 2017) ("The 25% benchmark award

5  is presumptively reasonable, reflecting a market based fee."); *see also Craft v. Cty, of San*

6  *Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often

7  result in fees above 25%.").

8       A lodestar cross-check also demonstrates the reasonableness of a 25% fee award.  While

9  Lead Counsel have not yet completed a comprehensive review of their time in this Action, and

10  note that additional time will be spent in connection with final approval and Settlement

11  administration, Lead Counsel's lodestar is approximately $400,000 based on approximately 560

12  hours of attorney and professional staff time.  *See* Joint Decl. ¶43.  Thus, an award of 25% of the

13  Settlement Amount (or $475,000) would result in a multiplier of approximately 1.2 on Lead

14  Counsel's lodestar to date.  *Id.* ¶44.  A multiplier of 1.2 is well-within the range of reasonableness.

15  *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar

16  is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous

17  examples of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4

18  (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex

19  class action cases."); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal.

20  June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the

21  difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent

22  and quick results obtained for the Class, the contingent nature of the fee and risk of no payment,

23  and the range of fees that are customary.").  If preliminary approval is granted, Lead Counsel will

24  present its total lodestar in connection with its fee application at final approval.

25       Lead Counsel also intends to seek reimbursement of Plaintiffs' Counsel's litigation

26  expenses in an amount not to exceed $50,000, which includes the substantial costs of retaining

27  experts and investigators.  Joint Decl. ¶45.  Again, Lead Counsel will provide appropriate detail in

28  support of any request for reimbursement of litigation expenses in connection with its fee

1    application at final approval.

2         Finally, pursuant to the PSLRA (15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)), Lead Counsel

3    also will seek an award on behalf of the representative Plaintiffs to recover unreimbursed costs

4    (including the cost of time spent) for the work they performed on behalf of the Settlement Class.

5    Here, Lead Counsel will request $3,500 for each Plaintiff (or an aggregate of $14,000).   If

6    preliminary approval is granted, the request will be supported by declarations from each Plaintiffs

7    documenting work performed on behalf of the Settlement Class.   This work included, but was not

8    limited to: (a) reviewing pleadings, briefs, and Court orders; (b) communicating with Lead

9    Counsel via email and telephone about case developments and litigation strategy; (c) consulting

10   with Lead Counsel regarding the Settlement Amount and ultimately approving the Settlement; and

11   (d) communicating with Lead Counsel regarding the process for finalizing the Settlement.   Joint

12   Decl. ¶46.   Plaintiffs respectfully submit that reimbursement of $3,500 for the time and effort they

13   expended for the benefit of the Settlement Class is both reasonable and appropriate.   *See Cheng*

14   *Jiangchen v. Rentech, Inc*., 2019 WL 5173771, at *11 (C.D. Cal. Oct. 10 2019) (reimbursement to

15   Lead Plaintiff of $3,500 under PSLRA).   It is also well below reimbursement awards in similar

16   complex cases.   *See, e.g.*, *Todd v. STAAR Surgical Co*., 2017 WL 4877417, at *6 (C.D. Cal. Oct.

17   24, 2017) ($10,000 award); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000

18   reimbursement to lead plaintiff); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *1

19   (D. Or. Nov. 13, 2006) ($10,000 incentive awards to class representatives).

20   **IX.    THE PROPOSED CLAIMS ADMINISTRATOR**

21        Plaintiffs also request that the Court authorize the retention of Strategic Claims Services

22   ("SCS") to serve as the Claims Administrator.    After obtaining bids from four nationally

23   recognized claims administration firms, Lead Counsel retained SCS to administer Notice of the

24   proposed Settlement and to process Claims.    Joint Decl. ¶¶29-30.    SCS is a respected and

25   experienced claims administrator, with experience in administrating many large and complex

26   securities litigation matters.  Mulholland Decl. ¶3; Joint Decl. ¶¶32-33.

27        SCS's fees for administration of the Settlement are charged on a per-claim basis and

28   expenses will be billed separately (including expenses for printing and mailing the Postcard

Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Joint Decl. ¶¶34-35.  Because the costs very much depend on how many Postcard Notices are ultimately mailed and how many Claims are received and processed, at this time only a rough estimate of the total Notice and Administration Costs can be provided.

For now, SCS estimates, based on its past experience with securities settlements of a similar size and companies with similar market capitalization and the length of the Settlement Class Period, that 40,000 Postcard Notices will be mailed and that the claims rate (*i.e.*, claims that will be processed) will be between 20% to 30%.  Mulholland Decl. ¶¶16-17.  Based on these estimates, SCS estimates that the total Notice and Administration Costs for the Action will be approximately $135,000.  *Id*, ¶18.  These costs are necessary to effect the Settlement, equate to approximately 7% of the total value Settlement, and are reasonable in relation to the value of the Settlement.  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

## X.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court should set a final approval of the settlement hearing date, dates for mailing and publication of the notice program, and deadlines for submitting claims, opting out, or objecting to the Settlement.  Plaintiffs propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| EVENT | PROPOSED DATE |
|---|---|
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Within 21 calendar days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶11) |
| Deadline to publish the Summary Notice | Within 21 calendar days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶17) |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶28) |
| Deadline for submitting objections and for | 21 calendar days prior to the Settlement |

| requesting exclusion | Hearing (Preliminary Approval Order, ¶¶21, 25) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶29) |
| Settlement Hearing | At the Court's earliest convenience thereafter (Preliminary Approval Order, ¶6)[8] |
| Deadline for submitting Claim Forms | Postmarked or received 44 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶19) |

## XI.   CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court grant their motion and enter the Preliminary Approval Order.

Dated:  August 7, 2020

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Kara M. Wolke*
Robert V. Prongay
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Jonathan Horne (pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com

*Co-Lead Counsel for Plaintiffs
and the proposed Settlement Class*

---

[8] Furthermore, in accordance with CAFA, the Settlement Hearing shall not be held earlier than ninety (90) days after the CAFA notices are served.  28 U.S.C. § 1715(d); Stipulation, ¶39.

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 7, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 7, 2020, at Los Angeles, California.


*s/ Kara M. Wolke*
Kara M. Wolke