ROBERT V. PRONGAY (#270796)
KARA M. WOLKE (#241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

-and-

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*
*and the proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE EVENTBRITE SECURITIES LITIGATION | Master File No. 5:19-cv-02019-EJD <br><br> **CLASS ACTION** <br><br> **DECLARATION OF KARA M. WOLKE AND LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Hearing Date:  October 29, 2020 <br> Time:  9:00 a.m. <br> Location:  Courtroom 4—5th Floor <br> Judge:  Hon. Edward J. Davila |

JOINT DECLARATION IN SUPPORT OF PRELIMINARY APPROVAL
Master File No. 5:19-cv-02019-EJD

**TABLE OF CONTENTS**

I.      HISTORY AND BACKGROUND OF THE LITIGATION ............................................. 1

II.     INFORMATION ABOUT THE SETTLEMENT.................................................................. 3

        A.      The Settlement Amount ............................................................................... 3

        B.      Settlement Class Definition......................................................................... 3

        C.      The Releases ................................................................................................ 4

        D.      The Anticipated Recovery Under the Settlement........................................ 4

        E.      The Proposed Plan of Allocation of the Settlement Fund ........................... 5

        F.      Estimate of Claims Rate .............................................................................. 6

        G.      There Are No Reversions to the Defendants............................................... 6

III.    Settlement Administration Selection Process ......................................................... 6

IV.     The Notice Program ............................................................................................... 8

        A.      The Notice Distribution Plan....................................................................... 8

        B.      The Contents Of The Notice Are Adequate ................................................ 9

V.      Opt-Outs and Objections........................................................................................ 9

VI.     Attorneys' Fees and Litigation Expenses............................................................. 10

VII.    Plaintiffs' Request for Reimbursement Under the PSLRA................................... 10

VIII.   Timeline ............................................................................................................... 11

IX.     Class Action Fairness Act (CAFA) Notice .......................................................... 12

X.      Past Distributions ................................................................................................ 12

XI.     List of Exhibits .................................................................................................... 13

We, Kara M. Wolke and Laurence Rosen, hereby declare and state as follows:

1.    I, Kara M. Wolke, am an attorney admitted to practice before this Court.  I am a partner with the law firm of Glancy Prongay & Murray LLP ("GPM"), Court-appointed Co-Lead Counsel for Plaintiffs and the proposed Settlement Class.  I have personal knowledge of the facts set forth herein and if called upon to testify I could and would do so truthfully and accurately.

2.    I, Laurence M. Rosen, am an attorney admitted to practice before this Court.  I am a partner with the law firm of Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Co-Lead Counsel for Plaintiffs and the proposed Settlement Class.  I have personal knowledge of the facts set forth herein and if called upon to testify I could and would do so truthfully and accurately.

3.    We submit this declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for Preliminarily Approval of Settlement.  We make this declaration to further provide the information required by the United States District Court for the Northern District of California's *Procedural Guidance for Class Action Settlements*.

## I.    HISTORY AND BACKGROUND OF THE LITIGATION

4.    On April 15, 2019, plaintiff Michael Gomes filed a complaint in the United States District Court for the Northern District of California, styled *Michael Gomes v. Eventbrite Inc.*, *et al.*, case No. 5:19-cv-02019-EJD, alleging violations of federal securities laws.  Later, on June 3, 2019, a separate complaint was filed in the same court, styled *Charles Robinson v. Eventbrite Inc.*, *et al.*, Case No. 3:19-cv-03045-SI, also alleging violations of the federal securities laws.

5.    On June 14, 2019 Plaintiffs Michael Gomes, Melvin Pastores, and Mohit Uppal ("Lead Plaintiffs" or the "Eventbrite Investor Group") moved to: (a) consolidate the related cases; (b) appoint the Eventbrite Investor Group as Lead Plaintiffs; and (c) approve the Investor Group's selection of the Rosen Law and GPM as Co-Lead Counsel  (Dkt. Nos 12-13), which the Court later granted on August 22, 2019.  Dkt. Nos. 35-37.

6.    On October 11, 2019, Lead Plaintiffs and Named Plaintiff Bruce Bones (collectively, "Plaintiffs") filed and served their Consolidated Amended Class Action Complaint for violating the Federal Securities Laws ("CAC"), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the

U.S. Securities and Exchange Commission and §§ 11 and 15 of the Securities Act of 1933 ("Securities Act") on behalf of a class of all purchasers of Eventbrite securities who purchased or otherwise acquired Eventbrite securities: (a) pursuant or traceable to Eventbrite's registration statement and prospectus ("Registration Statement") issued in connection with the Company's September 20, 2018 initial public offering ("IPO" or the "Offering"); or (b) between September 20, 2018 and May 1, 2019, inclusive.  Dkt. No. 40.

7. On December 11, 2019, Eventbrite, Julia Hartz, Randy Befumo, Andrew Dreskin, Katherine August-Dewilde, Roelof Botha, Kevin Hartz, Sean P. Moriarty, Lorrie M. Norrington, Helen Riley, and Steffan C. Tomlinson (collectively, the "Eventbrite Defendants")  timely moved to dismiss.  Dkt. Nos. 42-44.  Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Allen & Company LLC, RBC Capital Markets, LLC, SunTrust Robinson Humphrey, Inc., and Stifel, Nicolaus & Company, Incorporated (collectively, the "Underwriter Defendants") joined the Eventbrite Defendants' motion on December 11, 2019.  Dkt. No. 45.

8. Plaintiffs timely opposed on January 31, 2020.  Dkt. Nos. 50-52.  Defendants replied on March 3, 2020.  Dkt. No. 53.  The Underwriter Defendants also joined the Defendants in Defendants' reply to Plaintiffs' opposition.  Dkt. No. 55.

9. On April 28, 2020, the Court granted Defendants' motion to dismiss with leave to amend.  Dkt. No. 59.

10. Following the Court's dismissal of the Action, Plaintiffs engaged in further research and investigation of their claims.  In addition, prior to and following the Court's dismissal, the Parties engaged in settlement discussions.  The Parties reached an agreement in principle on June 17, 2020.

11. After substantial arms'-length negotiations, including the exchange of multiple drafts of the Stipulation and its exhibits, the Parties executed the Stipulation setting forth the terms of the Settlement on July 29, 2020.  A true and correct copy of the Stipulation is attached as Exhibit 1.[1]

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation.

## II.   INFORMATION ABOUT THE SETTLEMENT

### A.   The Settlement Amount

12.   The Stipulation sets forth, among other things, the Parties' agreement to settle and release all claims in return for a cash payment by or on behalf of Defendants in the amount of $1,900,000 for the benefit of the Settlement Class, subject to certain terms and conditions.

### B.   Settlement Class Definition

13.   Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: "all persons and entities that purchased or otherwise acquired Eventbrite, Inc. securities: (a) pursuant or traceable to Eventbrite's registration statement and prospectus ("Registration Statement") issued in connection with the Company's September 20, 2018 initial public offering ("IPO"); or (b) between September 20, 2018 and May 1, 2019, both dates inclusive (the "Class Period"), and were damaged thereby.[2]  Stipulation, ¶33.

14.   The CAC similarly proposed certification of a class of "persons and entities that: a) purchased or otherwise acquired Eventbrite, Inc. ("Eventbrite" or the "Company") securities pursuant or traceable to Eventbrite's registration statement and prospectus ("Registration Statement") issued in connection with the Company's September 2018 initial public offering ("IPO" or the "Offering"); or b) purchased or otherwise acquired Eventbrite securities between September 20, 2018 and May 1, 2019, inclusive."  CAC, ¶1.

15.   There is no material difference between the class initially proposed in the CAC and the proposed Settlement Class.  One minor difference is that the proposed Settlement Class does not exclude Investment Vehicles.[3]  *Compare* CAC ¶¶1, 119, 192 with Stipulation, ¶33.

---

[2] Excluded from the Settlement Class are: Defendants, Eventbrite's officers and directors, their immediate family members, and entities in which such excluded person hold a controlling interest. Also excluded from the Settlement Class is any Person who timely and validly seeks exclusion from the Settlement Class.  Notwithstanding any aforementioned exclusions from the definition of "Settlement Class," Investment Vehicles shall not be excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants.  Stipulation, ¶33.

[3] "Investment Vehicles" means any investment company, separately managed account, or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Underwriter Defendants, or any of them, have, has or may

JOINT DECLARATION IN SUPPORT OF PRELIMINARY APPROVAL
Master File 5:19-cv-02019-EJD                                                    3

### C.     The Releases

16.     Under the terms of the proposed Settlement, the Parties have agreed that Plaintiffs and each of the other Settlement Class Members shall waive and release each and every Released Claim against Released Defendants Parties in exchange for a payment by or on behalf of Defendants of $1,900,000 in cash, as set forth in greater detail in paragraph 32 of the Stipulation.

17.     The Released Claims are defined in the Stipulation (*see* Stipulation, ¶26) as:

> "any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, whether known or Unknown Claims (as defined below), whether suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, whether arising under federal, state, common or foreign law or regulation upon any theory of law or equity now existing or coming into existence in the future, whether class or individual in nature, that arise out of or relate in any way to ***both*** (i) the purchase, sale, or holding of Eventbrite securities pursuant or traceable to Eventbrite's registration statement and prospectus ("Registration Statement") issued in connection with the Company's September 20, 2018 initial public offering ("IPO") ***or*** were otherwise purchased, sold, or held during the Class Period, ***and*** (ii) the allegations, transactions, acts, facts, events, circumstances, statements, or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Settlement Class in the Action or in any other action in any court or forum which relate to the subject matter of this Action.  Released Claims do not include derivative claims on behalf of Eventbrite, except that neither Plaintiffs nor their counsel will bring any derivative claims related to any allegations, transactions, acts, facts, events, circumstances or wrongdoing alleged in the Action. Defendants will release Plaintiffs and their counsel for all Released Defendants' Claims arising from the Action."

18.     While the release includes Unknown Claims and other claims that "could have been asserted" in this Action, the release of such claims is appropriate because all released claims are based on the "identical factual predicate" of the claims asserted in this Action.  The proposed Settlement does not release any claims to enforce the Settlement, or claims of any Person that excludes himself, herself, or itself from the proposed Settlement Class.

### D.     The Anticipated Recovery Under the Settlement

19.     The $1.9 million cash Settlement Amount amounts to an estimated average recovery of approximately $0.102 per damaged share before the deduction of Court-approved fees

have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any Underwriter Defendant alone or together with its respective affiliates is not a majority owner or does not hold a majority beneficial interest.  Stipulation, ¶15.

JOINT DECLARATION IN SUPPORT OF PRELIMINARY APPROVAL
Master File  5:19-cv-02019-EJD                                                                4

and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation. *See* Long Notice, p.1.

20. If Lead Counsel requests attorneys' fees of up to 25% of the Settlement Fund and reimbursement of the maximum amount of expenses listed in the Notice and the Court approves such request, the cost is estimated to be $0.029 per damaged share.

21. If Plaintiffs had fully prevailed at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drops alleged in this case—*i.e.*, Plaintiffs' best-case scenario, estimated total maximum damages under Section 11 is $33.5 million and under Section 10(b) is 121.9 million. If Defendants were to prevail on their argument that loss causation is lacking for Plaintiffs' second alleged corrective disclosure date, estimated Section 10(b) damages would drop by approximately one-half. Thus, the $1.9 million Settlement Amount represents a recovery of approximately 5.7% for Section 11 damages and 1.6% to 3% for Section 10(b) damages potentially available in this Action.

### E. The Proposed Plan of Allocation of the Settlement Fund

22. The proposed Plan of Allocation is detailed in the Long Notice and incorporated by reference into the Stipulation. *See* Stipulation, ¶90; Long Notice, pp. 6-7. The Long Notice will be posted online, and available for download, on the case-specific website dedicated to this Settlement, www.EventbriteSecuritiesSettlement.com, and mailed to Settlement Class Members upon request.

23. The Plan of Allocation reflects an assessment of the damages that Plaintiffs contend they could have recovered under the theories of liability asserted in the Action. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*, the $1.9 million Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Expenses; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share shall be based on the

amount of each Authorized Claimant's Recognized Loss compared to the total Recognized Loss of all Authorized Claimants. *See* Stipulation ¶63, Long Notice at pp. 6-7.

24. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Eventbrite common stock the Claimant purchased, acquired, or sold during the Settlement Class Period and when that Claimant bought, acquired, or sold the shares.

**F.    Estimate of Claims Rate**

25. As explained more fully in the Mulholland Declaration (Ex. 4), Strategic Claims Services ("SCS" or the "Claims Administrator") estimates that, based on Eventbrite's trading history during the Settlement Class Period, as many as 40,000 Postcard Notices will be mailed to potential Settlement Class Members. Mulholland Decl., ¶16.

26. Based on SCS's experience in notification and claims administrating in private securities litigation matters (*see id.*, ¶3), the claims rate on average is between 20% and 30% of the number of mailings in similar settlements, and on average as many as 70% of the Claims received and processed by SCS may be valid and eligible for distribution. Mulholland Decl., ¶17.

**G.    There Are No Reversions to the Defendants**

27. Under the terms of the Stipulation, no portion of the Settlement Amount will revert to any defendant. *See* Stipulation, ¶50.

28. The Settlement contains a condition subsequent that permits Defendants to terminate the Settlement if the aggregate number of allegedly damaged publicly traded Eventbrite securities purchased during the Settlement Class Period by persons who would otherwise be entitled to participate as members of the Settlement Class, but who timely and validly request exclusion from the Settlement Class exceeds the sum specified in a separate Confidential Supplemental Agreement between Lead Counsel and Defendants' Counsel. *See* Stipulation, ¶ 80.

**III.    Settlement Administration Selection Process**

29. Lead Counsel retained the Claims Administrator, SCS, in order to provide (i) notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) the administration of the claims process.

30.　　Before retaining SCS, Lead Counsel solicited requests for proposals for notice and administration of the Settlement from four experienced settlement administrators.　Lead Counsel then compared the submitted proposals, taking into consideration each administrator's estimated cost to administer the entire Settlement, the cost of the notice program, and the cost of each processed Claim.　Lead Counsel also considered certain fixed costs associated with the administration of the settlement, such as the construction and maintenance of the settlement website.　SCS had the lowest fees among its peers when measured by its fee cap.

31.　　The potential settlement administrators proposed notifying the Settlement Class by Postcard Notice with the Notice sent upon request.　Each potential settlement administrator proposed using paper checks to distribute valid settlement claims.

32.　　In the past two years, SCS has administered, or is currently administering, the following settlements in which GPM was sole Lead or Co-Lead Counsel: *In re United Development Funding IV Securities Litigation*, Case No.3:15-cv-4030-M (N.D. Tex.); *In re Patriot National, Inc. Securities Litigation*, Case No. 1:17-cv-01866-ER (S.D.N.Y.); *Too v. Rockwell Medical, Inc. et al.*, Case No. 1:18-cv-04253-ARR-RER (E.D.N.Y.); and *Pritchard v. Apyx Medical Corp., et al.*, Case No. 8:19-cv-00919-SCB-AEP (M.D. Fla.).

33.　　In the past two years, SCS has administered, or is currently administering, the following settlements in which Rosen Law was sole Lead or Co-Lead Counsel:　*Christine Asia Co., Ltd. v. Ma*, Case No. 1:15-md-02631-CM (SDA) (S.D.N.Y.); *Hull v. Global Digital Solutions, Inc.*, Case No. 3:16-cv-05153FLW-TJB (D.N.J.); *In re: Akers Biosciences, Inc., Securities Litigation*, Case No. 2:18-cv-10521-ES-CLW (D.N.J.); *Allen v. PixarBio Corp.*, Case No. 2:17-cv-00496-CCC-SCM (D.N.J.); *Hrasok v. Kraton Corp.*, Case No. 4:18-cv-591-GCH (S.D. Tex.); *Zubriski v. BioAmber, Inc.*, Case No. 2:17-cv-01531-ADS-GRB (E.D.N.Y.); *Brendon v. Allegiant Travel Co.*, Case No. 2:18-cv-01758-APG-BNW (D. Nev.);　*In re: Spectrum Pharmaceuticals, Inc. Securities Litigation*, Case No. 2:16-cv-02279-RFB-EJY (D. Nev.); *In re Silver Wheaton Corp. Securities Litigation*, Case No. 2:15-cv-05146-CAS-PJWx (C.D. Cal.); *In re USA Technologies Inc. Securities Litigation*, Case No. 2:19-cv-04565-JHS (E.D. Pa.).

34.    SCS's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Claims Form, publishing Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone line).

35.    At this time, SCS estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs administering the notice, processing Claims, and distributing the Net Settlement Fund, among others, will cost approximately $135,000 (or 7% of the Settlement Amount).[4] Mulholland Decl., ¶18.  These costs are necessary in order to effectuate the Settlement and are reasonable in relation to the value of the Settlement.  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  Stipulation, ¶¶ 21, 59-60.

## IV.    The Notice Program

### A.    The Notice Distribution Plan

36.    In accordance with the terms of the proposed Preliminary Approval Order, Lead Counsel will cause the Claims Administrator to mail, by first-class mail, individual copies of the Postcard Notice to all Settlement Class members who can be identified through reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously with the mailing of the Postcard Notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form online at www.EventbriteSecuritiesSettlement.com.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

37.    Additionally, within twenty-one (21) calendar days after entry of the Preliminary Approval Order, the Summary Notice will be published once in *Investor's Business Daily* and transmitted once over the *GlobeNewswire*. Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.  Significantly, with an estimated mailing to 40,000 shareholders, a full printed Notice

---

[4] This anticipated cost is based on the estimate that 40,000 Postcard Notices will be mailed to potential Settlement Class Members and that between 8,000 to 12,000 Claims will be processed. *See* Mulholland Decl., ¶¶16-17.

and Claim Form (*i.e.*, a Notice Packet) sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.

38. Lead Counsel respectfully submits that the combination of the mailed Postcard Notice, published Summary Notice, and availability online of the Notice provides the best notice that is practicable under the circumstances.

### B. The Contents Of The Notice Are Adequate

39. Plaintiffs' proposed notice program satisfies the requirements of Rule 23(c)(2) and the requirements of the PSLRA, 15 U.S.C. §§ 78u-4(a)(7) and 77u-4(a)(7), and does so in easily understandable language. In addition, the notice program includes the following information in accordance with the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"): (i) the contact information for Lead Counsel to answer questions (*see* Long Notice, p. 2); (ii) the Settlement website address (*see* Long Notice, pp. 2, 3, 8; Summary Notice, Postcard Notice), which will be maintained by SCS and will contain links to the Stipulation, the Long Notice, the Claim Form, the motions for preliminary approval and final approval of settlement, and other relevant case documents; (iii) instructions on how to request printed copies of the Long Notice and/or Claim Form from the Claims Administrator. All blanks in the Long Notice, Claim Form, Summary Notice, and Postcard Notice will be filled in once the Court sets those dates and these documents are finalized prior to mailing and publication.

### V. Opt-Outs and Objections

40. The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class Members of the method to opt out, and the consequences of opting out. *See* Long Notice, p. 9. The identification of the Eventbrite common shares that each potential Settlement Class Member requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, is required to identify if such person or entity would otherwise be a Settlement Class Member. *Id.*

JOINT DECLARATION IN SUPPORT OF PRELIMINARY APPROVAL
Master File  5:19-cv-02019-EJD                                                          9

41.     The notice program instructs potential Settlement Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  *See* Long Notice, pp. 2, 10-11.  The Notice instructs any potential objector to send their written objection to the Court, and makes clear that the Court can only approve or deny the Settlement.  Long Notice, pp. 2, 10-11.  The instructions in the Notice largely follow the Class Settlement Guidelines suggested language.  *Id*.

## VI.     Attorneys' Fees and Litigation Expenses

42.     For their efforts on behalf of the Settlement Class, Lead Counsel will apply for an award of up to 25% of the $1.9 million Settlement Fund, or $475,000.

43.     Lead Counsel's total current lodestar is approximately $400,000, for approximately 560 hours of attorney and professional support staff time based on Lead Counsel's current billing rates.  These rates are consistent with the experience of Lead Counsel.  Both GPM and Rosen Law have deep experience in prosecuting securities class actions.  *See* Ex. 2 (GPM firm résumé); and Ex. 3 (Rosen Law firm résumé).

44.     The anticipated requested fee results in a modest multiplier of 1.2 to Lead Counsel's current total lodestar.  Lead Counsel's current total lodestar also does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, or work related to drafting the final approval and distribution motions.

45.     Lead Counsel will also apply for reimbursement of Litigation Expenses from the Settlement Fund, an amount not to exceed $50,000.  These Litigation Expenses were paid or incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants.  This amount will include an application for reimbursement of the reasonable costs and expenses (including lost wages) incurred by Lead Plaintiffs and Named Plaintiff directly related to their representation of the Settlement Class pursuant to the PSLRA.

## VII.    Plaintiffs' Request for Reimbursement Under the PSLRA

46.     Lead Counsel also intend to seek an award for the four representative Plaintiffs, pursuant to 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4), as reimbursement for their time and expenses in representing the Settlement Class in an amount up to $3,500 each, or an aggregate of

$14,000. Lead Counsel believes this amount is supported by the work that Plaintiffs did throughout the Action, including making themselves available to counsel to discuss the case and strategy, reviewing the pleadings and orders filed in the Action, participating in Settlement negotiations through counsel, and approving the Settlement for the benefit of all Settlement Class Members. Plaintiffs' involvement will be further presented to the Court in connection with their request for reimbursement.

**VIII.    Timeline**

47.    In connection with preliminary approval, Plaintiffs request that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation expenses must submit that objection; and (iv) a date on which the Court will hold the final Settlement Hearing.

48.    The following proposed schedule was agreed to by the Parties and is set forth in the proposed Preliminary Approval Order:

| EVENT | PROPOSED DATE |
| --- | --- |
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Within 21 calendar days of the entry of Preliminary Approval Order (Preliminary Approval Order, ¶11) |
| Deadline to publish the Summary Notice | Within 21 calendar days of the entry of Preliminary Approval Order (Preliminary Approval Order, ¶17) |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶28) |
| Deadline for submitting objections and for requesting exclusion | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶21, 25) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶29) |
| Settlement Hearing | At the Court's earliest convenience thereafter (Preliminary Approval Order, ¶6)[5] |

| Deadline for submitting Claim Forms | Postmarked 44 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶19) |
|---|---|

## IX.    Class Action Fairness Act (CAFA) Notice

49.    Defendants shall be responsible for providing any required notice under the Class Action Fairness Act of 2005 ("CAFA"), if any, at their own expense.  Stipulation, ¶60.

## X.    Past Distributions

50.    The Class Settlement Guidelines requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements.  The following chart represents the requested information for [two] other class action settlements for violations of the federal securities laws in which GPM served as sole Lead or Co-Lead Counsel:

| Matter | *In re Pacific Coast Oil Trust Securities Litigation*, Lead Case No. BC550418 (Super. Ct. Los Angeles) | *In re Provectus Biopharmaceuticals, Inc. Securities Litigation*, Civil Action No. 3:14-cv-00338-PLR-HBG (E.D. TN) |
|---|---|---|
| Total Settlement Fund | $7,600,000.00 | $3,500,000.00 |
| Method of Notice | Notice and Claim Form | Postcard Notice |
| Total Number of Sent Notices[6] | approximately 52,000 | 28,036 |
| The Number of Claim Forms Submitted | 11,324 | 2,024 |
| Percentage of Claims Forms Submitted | 21.8% | 7.2% |
| The Number of Acceptable (In Whole or In Part) Claim Forms Submitted | 7,154 | 1,276 |
| Average Recovery per Claimant (based on number of Acceptable Claims) | $668.97 | $1,680.78 |

---

[5] Lead Counsel is unable to provide the total number of class members, because, as explained further in the Mulholland Declaration (¶¶5-6), most securities are held under a "street name" system in which the vast majority of investors hold their securities through a brokerage firm, institution, or other third-party nominee and do not actually purchase and hold securities under their own names.

| | | This case is still in the process of supplemental distribution of the Net Settlement Fund. |
|---|---|---|
| *Cy Pres* Recipient | Legal Aid Foundation of Los Angeles | |
| **Amount Distributed to *Cy Pres* Recipient** | $27,780.02 | |
| **Administration Costs** | $207,144.60 | $133,548.35 |
| **Attorneys' Fees** | $2,530,800.00 | $1,165,500.00 |
| **Litigation Expenses** | $78,455.72 | $52,004.65 |

## XI.   List of Exhibits

51.   Attached as Exhibit 1 is a true and correct copy of the fully executed Stipulation and Agreement of Settlement dated July 29, 2020, along with the related exhibits.

52.   Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
|---|---|
| A | Preliminary Approval Order |
| A-1 | Long Notice |
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| A-4 | Postcard Notice |
| B | Proposed Judgment and Order |

53.   Attached as Exhibit 2 is a true and correct copy of GPM's current firm résumé.

54.   Attached as Exhibit 3 is a true and correct copy of Rosen Law's current firm résumé.

55.   Attached as Exhibit 4 is a true and correct copy of the Declaration of Paul Mulholland Regarding Notice Plan, dated August 5, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 7, 2020, in Los Angeles, California.

s/ Kara M. Wolke
Kara M. Wolke

s/ Laurence M. Rosen
Laurence M. Rosen

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 7, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 7, 2020, at Los Angeles, California.


*s/ Kara M. Wolke*
Kara M. Wolke