ROBERT V. PRONGAY (#270796)
KARA M. WOLKE (#241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

-and-

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs*
*and the proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Eventbrite, Inc. Securities Litigation | Master File No. 5:19-cv-02019-EJD |
| | <u>CLASS ACTION</u> |
| | **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND ADJOURN HEARING ON MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| | Thursday, October 29, 2020 9:00 a.m. Hon. Edward J. Davila San Jose Courthouse, Courtroom 1—5th Floor |
| This Document Relates To: All Actions | |

PLAINTIFFS' OPPOSITION TO MOTION TO ADJOURN -- Case No. 5:19-cv-02019-EJD

**Table of Contents**

I.      INTRODUCTION ............................................................................................................... 1

II.     PROCEDURAL HISTORY ............................................................................................... 2

        A. Pre-Settlement Procedural History of This Case ...................................................... 2

        B. Procedural History of the State Case ........................................................................ 3

                1.  The State Court Dismissed State Plaintiffs' Complaint .................................... 3

                2.  The State Court Dismisses the State Plaintiffs' Second Complaint ................... 4

        C. The Settlement ........................................................................................................... 5

III.    CLAIMS AT ISSUE ......................................................................................................... 5

IV.     THE COURT SHOULD DENY STATE PLAINTIFFS' REQUEST TO ADJOURN THE
        PRELIMINARY APPROVAL HEARING ........................................................................ 7

        A. State Plaintiffs Already Have A Forum to Voice Objections To the Settlement ................. 7

                1.  State Plaintiffs Cannot Intervene As of Right Because Rule 23 and the Settlement's
                    Terms Already Protect Their Interests ........................................................................ 7

                2.  The Court Should Deny Permissive Intervention Because State Plaintiffs Add
                    Nothing ...................................................................................................................... 8

        B. Even If the Court Grants State Plaintiffs Leave To Intervene, It Should Deny Their
           Request to Adjourn The Preliminary Approval Hearing ......................................................... 9

V.      THE COURT SHOULD CONSIDER STATE PLAINTIFFS' MOTION AS AN
        UNTIMELY OBJECTION TO THE PRELIMINARY APPROVAL MOTION AND
        DENY IT ON THE MERITS ........................................................................................... 10

        A. The Settlement Offers Real Relief ........................................................................... 10

        B. State Plaintiffs' Procedural Objections Lack Merit ................................................. 13

        C. Plaintiffs Respectfully Disagree with the State Court's Statement that The Preliminary
           Approval Motion misstates the State Court's Order Sustaining the Demurrer to State
           Plaintiffs' Second Amended Complaint ..................................................................... 14

        D. State Plaintiffs' Damages Estimates Are Not Realistic ........................................... 16

VI.     CONCLUSION ................................................................................................................ 18

## <u>Table of Authorities</u>

<u>**Pages**</u>

### <u>Cases</u>

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal. 1976) ................................................................................................ 8

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015)................................................................................................... 8

*Cody v. SoulCycle, Inc.*,
  No. CV1506457MWFJEMX, 2017 WL 8811114 (C.D. Cal. Sept. 20, 2017) .................... 7, 8, 9

*Cotter v. Lyft, Inc.*,
  No. 13-CV-04065-VC (N.D. Cal. June 28, 2016)..................................................................... 8

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007)................................................................................................. 10

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ...................................................................................................................... 8

*Doryit on behalf of Power Sols. Int'l, Inc. v. Winemaster*,
  *950 F.3d 984 (7th Cir. 2020)* ................................................................................................. 13

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011)............................................................................................... 13

*Feller v. Transamerica Life Ins. Co.*,
  No. 16CV01378CASGJSX, 2018 WL 6025839 (C.D. Cal. Nov. 16, 2018) .............................. 7

*Forsyth v. HP Inc.*,
  No. 5:16-CV-04775-EJD, 2020 WL 4923965 (N.D. Cal. Aug. 21, 2020) .............................. 8, 9

*Gallucci v. Boiron, Inc.*,
  No. 11CV2039 JAH(NLS), 2012 WL 12864924 (S.D. Cal. Apr. 25, 2012) ........................... 7, 8

*Huff v. CoreCivic, Inc.*,
  No. 217CV02320JARJPO, 2020 WL 430212 (D. Kan. Jan. 28, 2020) ...................................... 9

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................................... 9

*In re: Volkswagen &quot;Clean Diesel&quot; Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 2672, RB (JSC), 2016 WL 4376623 (N.D. Cal. Aug. 17, 20............................................... 7

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ............................................... 7

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................. 11

*Orange Cty. v. Air California*,
   799 F.2d 535 (9th Cir. 1986) ............................................................................................... 9

*Rosen v. Ingersoll-Rand Co.*,
   372 Ill. App. 3d 440 (2007) ............................................................................................... 13

*Sec. & Exch. Comm'n v. Fraser*,
   2011 WL 13233321 (W.D. Wash. Mar. 4, 2011) ....................................................................... 10

*Swinton v. SquareTrade, Inc.*,
   960 F.3d 1001 (8th Cir. 2020) .............................................................................................. 8

*Zamora v. Ryder Integrated Logistics, Inc.*,
   No. 13CV2679-CAB BGS, 2014 WL 9872803 (S.D. Cal. Dec. 23, 2014) ................................. 8

*Zepeda v. PayPal, Inc.*,
   No. 10CV02500SBAJCS, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) ................................... 7

Lead Plaintiff, the Eventbrite Investor Group (comprised of Michael Gomes, Melvin Pastores, and Mohit Uppal) and Plaintiff Bruce Bones (collectively, "Plaintiffs"), submit the following opposition to the motion of Crystal L. Clemons and Christina Cotte ("State Plaintiffs") to intervene and adjourn the preliminary approval hearing in this case (Dkt. No. 65, referred to herein as "Motion to Adjourn").

## I. INTRODUCTION

Plaintiffs in this case have agreed to settle this case for $1.9 million ("Settlement"). The Settlement recovers real money in difficult circumstances. Among others:

- This Court has already dismissed Plaintiffs' Amended Complaint. Moreover, the Court dismissed the Complaint largely because it disagreed with Plaintiffs' interpretation of Defendants' allegedly false statements (Dkt. No. 59 at 15-25);

- A state court ("State Court") separately dismissed a complaint brought by similarly situated Eventbrite investors ("State Plaintiffs"), filed after substantial discovery, likewise largely because it disagreed with the State Plaintiffs' interpretation of Defendants' allegedly false statements (see pp. 4-5, below);

- Alleged damages stand to fall considerably when disaggregating the portion of declines in Eventbrite's stock price that are not related to fraud;

- Eventbrite's business, helping customers organize live events, is uniquely vulnerable to coronavirus. Its revenues fell by 90% between the quarters ended June 30, 2019 and 2020.

Rule 23 clearly lays out the path for the proposed Settlement. First, at the October 29 hearing, the Court will consider whether to grant preliminary approval ("Preliminary Approval Hearing"). If it finds it will likely be able to approve the Settlement, Plaintiffs will send notice to Class Members. Class Members will be free to object to the Settlement or opt out of it. Then, the Court will consider Class Members' objections in determining whether to finally approve the Settlement.

Having missed the August 21 deadline to object to Plaintiffs' Motion for Preliminary Approval of the Settlement, State Plaintiffs instead move to intervene in this case solely to short-circuit the Settlement process by adjourning the Preliminary Approval Hearing. State Plaintiffs'

request would indefinitely stay this case while they proceed with theirs. Far from benefiting the Class, State Plaintiffs' motion would prevent Class Members from considering the Settlement – a Settlement that Defendants may not have any money to fund after State Plaintiffs take their third shot to plead a case. Moreover, California federal courts regularly hold that absent class members *may not* intervene in Rule 23(b)(3) settlements like this one in order to stay cases because Rule 23 already protects absent Class Members' interests.

Because the overwhelming weight of case law forecloses the relief State Plaintiffs request, the Court is well within its rights to deny their motion outright on procedural grounds. Nevertheless, Plaintiffs respectfully submit that the Court could instead construe the State Plaintiffs' motion as an objection to Preliminary Approval of the Settlement, putting aside the fact that it is untimely. But even when so considered, State Plaintiffs' objection fails on the merits. They ignore nearly all of the considerations that weigh in favor of preliminary approval. Instead, they speculate that because they plan to conduct additional discovery before their third (and likely last) attempt to plead a case, they *might* find an incriminating email which *might* allow them to plead a case. From there, State Plaintiffs speculate their case *might* have additional settlement value. But State Plaintiffs' rosy speculation is no reason to adjourn the Preliminary Approval Hearing, nor is it a reason to deny Preliminary Approval.

Finally, Plaintiffs take seriously the State Court's statement that the description of its order in Plaintiffs' Preliminary Approval Motion was misleading. Having re-examined the statements which the State Court questioned, however, Plaintiffs still believe that their description was accurate, as set out below.

State Plaintiffs' motion is an ill-conceived end-run around Rule 23 meant to advance their counsel's interests over those of the Class. The Court should deny their request to adjourn the Preliminary Approval Hearing and grant Preliminary Approval.

## II. PROCEDURAL HISTORY

### A. Pre-Settlement Procedural History of This Case

Plaintiffs' Motion for Preliminary Approval sets out the procedural history of this case. Briefly:

- Plaintiff Michael Gomes filed this Action on April 15, 2019;

- The Court appointed Lead Plaintiffs and co-Lead Counsel;

- Lead Plaintiffs filed an Amended Complaint;

- The Court granted Defendants' motion to dismiss the Amended Complaint, without prejudice; and

- During the time the Court allowed to file a Second Amended Complaint, the Parties reached a Settlement.

Thus, Court-appointed Lead Plaintiffs with full authority negotiated the Settlement at an important inflexion point in this case.

**B. Procedural History of the State Case**

*1. The State Court Dismissed State Plaintiffs' Complaint*

The State Plaintiffs filed their action on May 24, 2019. On June 3, 2019, the Court reminded State Plaintiffs that discovery in this case was not stayed. Declaration of Mark C. Molumphy, Dkt No. 65-1 ("Molumphy Dec."), Ex. 2 ("Discovery Order"), at 4. A month later, State Plaintiffs served requests for production. *Id.* Defendants promptly sought a protective order staying discovery. On August 20, 2019, the Court denied in part the Defendants' request. *Id.* The Court ordered that Defendants produce "specific and targeted discovery pertaining to defects in [their] Complaint and factual discovery needed towards potential cure of those pleading defects." *Id.* at 5. The State Court ordered the parties to submit a stipulated electronic discovery protocol and procedures order, which State Plaintiffs did not do until a year later. *Id.* at 7.

State Plaintiffs instead opted to proceed to a resolution of Defendants' demurrers without discovery. *Id.* at 6. While the State Court pre-set discovery conferences, State Plaintiffs told the State Court the conferences were not needed, and they were cancelled. *Id.* at 8.

The State Court dismissed the State Plaintiffs' complaint on November 1 and ordered them to file an Amended Complaint by January 10, 2020. *Id.* The State Court pre-set discovery conferences for November 22 and December 11, 2019. Both were cancelled, again at State Plaintiffs' request. *Id.*

On January 10, 2020, the deadline to file the amended complaint, State Plaintiffs stipulated to extend the deadline to February 10, citing the "time necessary for Plaintiff [] to review documents produced by Defendants." On February 10, State Plaintiffs filed their Amended Complaint ("State Amended Complaint"). Incorporating discovery, the State Amended Complaint cited internal memoranda (State ¶68)[1], internal schedules for the Ticketfly integration (State ¶74), internal models (State ¶122), "[n]umerous communications evidencing Eventbrite's understanding of the need to finalize the integration of the Ticketfly platform" (State ¶136), and pages and pages of redacted material.

### 2. The State Court Dismisses the State Plaintiffs' Second Complaint

On June 10, the State Court sustained the Defendants' demurrers in open court. As reflected in a June 23 order, the State Court divided the statements the State Plaintiffs alleged were false into three categories. Molumphy Dec. Ex. 1 ("Dismissal Order").

First, the State Court found that statements about the delays in the Ticketfly Migration and certain integration problems were not misleading. Most of the statements did not pertain to the Ticketfly integration. The one statement which did, that Eventbrite would integrate Ticketfly in 12-24 months, was true – the integration was completed within 24 months of the Ticketfly acquisition. The State Plaintiffs could only cure the deficiency by finding statements in the Registration Statement promising a more rapid integration. Having investigated the same question, Plaintiffs can say there are none. Moreover, like this Court, the State Court found that the Registration Statement "specifically warned of issues with integration." Dismissal Order, at 10. Thus, even finding a statement in the Registration Statement promising quicker integration might not suffice.

Second, the State Court found that the failure to disclose that personnel were internally shifted to the Ticketfly migration was not misleading. The State Court found that it is "common sense" that such shifts will occur following major corporate acquisitions like Eventbrite's purchase of Ticketfly. *Id.* at 11. Further, the State Plaintiffs had to show the transfers were a trend, but the State Court asked "[h]ow is this a 'trend' in the conventional sense? A 'trend' of what?" *Id.*

---

[1] Citations to "State ¶_" are to paragraphs of the State Amended Complaint, attached to the Declaration of Jonathan Horne as Exhibit 2.

Third, the State Court dismissed the State Plaintiffs' claim based on Eventbrite's financial metrics because the State Plaintiffs had not identified any particular financial metric that was either incorrect or misleading. *Id.* at 11-12.

State Plaintiffs misleadingly claim that the State Court upheld portions of their Complaint. In truth, the State Court dismissed all causes of actions as to all statements. Rather, the State Court rejected certain arguments Defendants made, such as that Defendants were not liable as control persons because they did not control any primary violations. *Id.* at 12, 28. These are trivial arguments that Defendants did not even bother to raise in this case. Defeating these arguments does not advance the goal State Plaintiffs must reach: to show that Defendants made a false statement. Without sufficiently alleging a primary violation, alleging a defendant's status as a "control person" for purposes of Section 15 or a "statutory seller" for purposes of Section 12 is meaningless.

## C. The Settlement

The Parties to this Action began discussing settlement while Defendants' motion to dismiss was pending. Settlement discussions continued after the Court granted the motions. The Parties reached an agreement in principle on June 17, 2020, informing the Court the same day. Defendants informed State Plaintiffs of the Settlement on July 31. Discovery Order, at 11.

Having drafted, negotiated, and executed the extensive settlement documentation, Plaintiffs filed a motion for Preliminary Approval of the Settlement on August 7, setting the Preliminary Approval Hearing" for October 29. Dkt. No. 62. Pursuant to Local Rule 7-3, oppositions were due by August 21, but the State Plaintiffs did not file one. Dkt. No. 64. Having missed the deadline to object by more than a month, on September 24 State Plaintiffs instead filed this motion to adjourn the Preliminary Approval Hearing – and set a hearing for that motion for October 29. Thus, because State Plaintiffs missed the deadline to object, their motion to adjourn the Preliminary Approval Hearing will be heard at the same time as the Preliminary Approval Hearing it seeks to adjourn.

## III. CLAIMS AT ISSUE

In 2017, Eventbrite's business was an online platform for event creators to plan, market, and

sell tickets to their events. ¶46.[2] Eventbrite served 170 countries and four core markets: festivals, music, registration events, and endurance events. ¶¶46, 51-52, 54. Eventbrite acquired Ticketfly from Pandora Media, Inc. in September 2017 for $201 million. ¶4. Like Eventbrite, Ticketfly's primary business is helping event creators plan, market, and sell tickets to their events. ¶47. Ticketfly accounted for a quarter of the combined company's revenue. ¶¶49-50. A main goal of the acquisition was to acquire Ticketfly's customer relationships while eliminating the Ticketfly platform. ¶¶6, 48.

On or about September 20, 2018 Eventbrite completed its IPO, selling 11.5 million shares at $23.00 per share, raising net proceeds of $246 million. ¶97. Eventbrite and the Underwriter Defendants marketed the IPO under a Registration Statement, including a Form S-1/A filed with the SEC on September 18, 2018 and a prospectus filed on September 20, 2018. ¶¶96-97.

Both Plaintiffs and State Plaintiffs allege that the Registration Statement failed to disclose material information relating to Eventbrite's Ticketfly integration. ¶98. Shortly after the Ticketfly acquisition, Eventbrite began to integrate the Ticketfly platform's features into its own. Eventbrite's ultimate goal was to migrate all of Ticketfly's customers to the Eventbrite platform. But, unbeknownst to investors, and undisclosed in the Registration Statement, because Ticketfly offered its customers white-glove service, they expressed reluctance to switch over to Eventbrite's one-size-fits-all service.

Plaintiffs here and the State Plaintiffs' allege that the Registration Statement's failure to disclose these trends rendered substantially the same statements misleading for substantially the same reasons. Both allege that Item 303 of Regulation S-K obligated Eventbrite the problems integrating the Ticketfly acquisition was a known trend or uncertainty. ¶¶99-103; State ¶¶117-133. Both allege that the same statement[3] gave the misleading impression that the Ticketfly integration

---

[2] References to "¶__" are to the Amended Complaint (Dkt No. 40). Unless otherwise indicated, all emphasis is added and all internal quotation marks, footnotes, and citations are omitted.

[3] ***Selectively Acquire Businesses Focused on Serving Creators.*** We have been successful leveraging our platform to make selective acquisitions that have contributed to creator and revenue growth. We accelerated our momentum through the acquisitions of ticketscript and Ticketfly. By finding like-minded teams who share a common ethos around serving creators, we can continue to expand and offer new capabilities to existing creators. The modularity and extensibility of our platform enables us to quickly integrate and migrate creators to the Eventbrite platform, allowing

was proceeding smoothly.[4] ¶102; State ¶100.[5]

Both actions aim to recover for the same losses. Both allege that class members were damaged when on March 7, 2019, Eventbrite announced problems in the Ticketfly integration, removing some of the artificial inflation in its stock price. ¶¶109-10. Both allege that the May 1, 2019 disclosure of poor Q1 2019 results, caused by Ticketfly integration troubles, removed more artificial inflation in the price of Eventbrite's stock, further damaging investors. ¶¶117-18.

## IV. THE COURT SHOULD DENY STATE PLAINTIFFS' REQUEST TO ADJOURN THE PRELIMINARY APPROVAL HEARING

### A. State Plaintiffs Already Have A Forum to Voice Objections To the Settlement

*1. State Plaintiffs Cannot Intervene As of Right Because Rule 23 and the Settlement's Terms Already Protect Their Interests*

For decades, California federal courts have routinely denied absent class members' motions to intervene to stay consideration of a settlement they deem inadequate, as State Plaintiffs do here.[6] Absent Class Members like State Plaintiffs may object or opt out of the Settlement pursuant to its terms. If the Court denies their objection, they may appeal even if they have not intervened. *Devlin*

---

us to quickly depreciate the acquired technology and associated costs. State Plaintiffs challenged another statement making the identical claim. State ¶113.

[4] The State Plaintiffs also alleged that Eventbrite's purported failure to disclose that Ticketfly's data had been hacked months before the IPO rendered the Registration Statement misleading. The Registration Statement disclosed and discussed the hack at length. State ¶86.

[5] State Plaintiffs allege other false statements but as the State Court found, they do not relate to Ticketfly. ¶¶102-03. Finally, State Plaintiffs challenged the statement that Eventbrite's revenues increased as a result of the Ticketfly integration, which is true, but struggled to explain how the statements could possibly be misleading. ¶¶105-09.

[6] *Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX, 2018 WL 6025839, at *4 (C.D. Cal. Nov. 16, 2018); *Cody v. SoulCycle, Inc.*, No. CV1506457MWFJEMX, 2017 WL 8811114, at *2 (C.D. Cal. Sept. 20, 2017); *Gallucci v. Boiron, Inc.*, No. 11CV2039 JAH(NLS), 2012 WL 12864924, at *2 (S.D. Cal. Apr. 25, 2012); *Zepeda v. PayPal, Inc.*, No. 10CV02500SBAJCS, 2014 WL 1653246, at *6 (N.D. Cal. Apr. 23, 2014) (Spero, M.J.), *objections overruled,* No. C 10-1668 SBA, 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009) (Seeborg, J.); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (Breyer, J.); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13CV2679-CAB BGS, 2014 WL 9872803, at *2 (S.D. Cal. Dec. 23, 2014).

*v. Scardelletti*, 536 U.S. 1, 12 (2002). Because of these protections, "[t]he Ninth Circuit has held (as have various district courts) that such objections are properly addressed through the regular objection process during final settlement approval, not through intervention." *Cody*, 2017 WL 8811114, at *2 (citing *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015))."District courts following *Devlin* have consistently determined that, where there is a right to object to the settlement or there is an opportunity to opt out of the settlement, intervention is unnecessary to protect a putative class member's interest." *Gallucci*, 2012 WL 12864924, at *2 (citing additional cases); *Cody*, 2017 WL 8811114, at *4 (same, and also citing additional cases).

Thus, "the [State Plaintiffs'] ability to protect their interest in the claims released by [this] action will not be impaired by the [] [S]ettlement, because the [State Plaintiffs] may file formal objections and appear at the final approval hearing, or opt out of the [] [S]ettlement and continue to pursue their claims [] if they wish." *Cotter v. Lyft, Inc.*, No. 13-CV-04065-VC, Dkt. No. 253, at 1-2 (N.D. Cal. June 28, 2016) (Horne Dec. Ex. 3); *accord Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2020 WL 4923965, at *3 (N.D. Cal. Aug. 21, 2020) (Davila, J.).

Further, to be entitled to intervene as of right, State Plaintiffs must show that their protectable interest is not being adequately represented. "There is a presumption of adequate representation when the persons attempting to intervene are members of a class already involved in the litigation or are intervening only to protect the interests of class members." *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005 (8th Cir. 2020). State Plaintiffs do not cite any facts to rebut the presumption. They simply argue that the Settlement is not adequate and make broad allegations about Plaintiffs' Counsel.

2. *The Court Should Deny Permissive Intervention Because State Plaintiffs Add Nothing*

The Court has "broad discretion" to deny permissive intervention even if its formal requirements are met. *Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). Courts deny permissive intervention when movants "do not significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Huff v. CoreCivic, Inc.*, No. 217CV02320JARJPO, 2020 WL 430212, at *2 (D. Kan. Jan. 28, 2020); *see also Forsyth*, 2020 WL 4923965, at *3 (denying absent class members

permissive intervention in part because of such concerns).

Here, allowing the State Plaintiffs to intervene serves no purpose. State Plaintiffs' only concern with this case is the adequacy of the Settlement. They do not need to intervene to air their concerns. They are purportedly Settlement Class Members. They can object to the Settlement. Thus, State Plaintiffs' "presence through intervention would not accomplish any more than their participation as objectors and would create the possibility of further delay and final disposition of this action. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993).

Moreover, State Plaintiffs admit they intervene to stay this action. Thus, their purpose is to prejudice the parties. *Cody*, 2017 WL 8811114, at *3 (prejudice where proposed intervenor aims to stay the action).

The Court should deny permissive intervention.

**B. Even If the Court Grants State Plaintiffs Leave To Intervene, It Should Deny Their Request to Adjourn The Preliminary Approval Hearing**

State Plaintiffs request that the Court adjourn the Preliminary Approval Hearing. Because the Stipulation of Settlement prevents Plaintiffs from pursuing their claims, State Plaintiffs' request amounts to a motion for a stay.

State Plaintiffs cite nothing to justify their request for a stay. They do not acknowledge that there are standards courts consider in determining whether to stay an action.

In determining whether to stay an action, courts in the Ninth Circuit employ a three-part test whose elements are:

(1) [T]he possible damage which may result from the granting of the stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Sec. & Exch. Comm'n v. Fraser*, No. CV 09-00443 PHX RJB, 2011 WL 13233321, at *3 (W.D. Wash. Mar. 4, 2011).

Further, "'if there is even a fair possibility that the stay ... will work damage to some one else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'"

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

These factors weigh against a stay. First, a stay will delay this action ***indefinitely***. State Plaintiffs ask this Court to stay this case until a decision on the demurrer to their Second Amended Complaint. State Plaintiffs claim that there is a deadline for Defendants to complete production of additional documents, but Plaintiffs are aware of no court-imposed deadlines for Defendants to complete that production. Further, at State Plaintiffs' request, the State Court did not set a deadline to file a Second Amended Complaint. Nor is there a briefing schedule on Defendants' demurrers, or a hearing scheduled to hear Defendants' arguments.

Second, State Plaintiffs will not suffer any hardship and inequity if this case is allowed to go forward. Courts hold as much when they deny absent class members leave to intervene to stay a settlement. *See* 7-9, above.

Third, the orderly course of justice favors allowing this Court to consider the motion for preliminary approval. Parties settle in part to avoid having to resolve questions. If the Court believes that it will likely be able to approve a settlement, and then does so, it will not have to resolve the question of whether Plaintiffs can state a claim. This is to the Settlement Class's advantage. The Settlement lets the Settlement Class recover something rather than the nothing they would likely get if Defendants' demurrers and motions to dismiss are granted.

## V. THE COURT SHOULD CONSIDER STATE PLAINTIFFS' MOTION AS AN UNTIMELY OBJECTION TO THE PRELIMINARY APPROVAL MOTION AND DENY IT ON THE MERITS

### A. The Settlement Offers Real Relief

The Defendants agreed to pay $1.9 million to settle the claims brought against them. It is almost one fourth of Eventbrite's net revenue for the quarter ended June 30, 2020. It is real money, paid by a company in dire financial straits.

State Plaintiffs still – incorrectly – contend that the Settlement is a poor result, focusing primarily on the percentage of damages recovered against maximum *possible* recovery.  But "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Plaintiffs provided an estimate of the percentage of recovery. The Settlement recovers 1.6% of maximum Section 10(b) damages and 5.7% of maximum Section 11 damages potentially available. Between 2010 and 2018, securities class actions in cases of this size recovered a median of 4.9% of maximum damages. Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2019 Review and Analysis, at 6 (Cornerstone Research). Thus, the Settlement does only slightly worse than the median—and when viewed in light of all the relevant circumstances, including the dismissals of Plaintiffs' and State Plaintiffs' complaints and the highly uncertain future of the Company, it is reasonable.

Moreover, the relatively low percentage of average recovery in securities class actions illustrates that maximum damages estimates are, by design, something like the litigation equivalent of assuming a royal flush. To recover maximum damages in a Section 10(b) case, plaintiffs must prove that the defendants made materially false statements with scienter and that they are entitled to class treatment, and that these misrepresentations caused the plaintiffs' losses. But they must also, crucially, convince the jury that the *entirety* of the stock price declines following *all* corrective disclosures are attributable to, or a materialization of the risk of, the defendants' fraudulent statements. Moreover, there is no joint and several liability except for intentional conduct, so plaintiffs must show recover all damages against each defendant. Finally, all Class Members must file claims, though typically only half do. And even obtaining maximum damages is not without its trade-offs. The Settlement Class would have to wait years, perhaps even a decade, while the Plaintiffs *maybe* survive a motion to dismiss, take discovery, certify a class, survive summary judgment, win at trial, and then survive an appeal – delaying justice and, thereby, lowering the value of the maximum damages to class members.

The Settlement in this case, reasonably, recovers less than the median settlement. This Court and the State Court both reviewed complaints and dismissed them. Moreover, both Courts found deficiencies in the interpretation the plaintiffs sought to place on the defendants' allegedly false statements rather than the amount of facts the plaintiffs marshaled to show that on their interpretation, the statements were false. And, as set out below, the State Court dismissed the State Plaintiffs' complaint after substantial discovery.

Likewise, Plaintiffs cannot show that all the stock drops are related to the fraud. The corrective disclosures were contained in Defendants' announcement of Eventbrite's 2018 annual and Q1 2019 quarterly results. These announcements contained copious other news, much of it bad. Thus, Defendants would surely argue—and stood likely to prove, at least in part—that the stock price declines did not result from the corrective disclosures alone, but also from some of the other bad news.

Collectability is strikingly risky. Eventbrite's business, helping to create live events, is uniquely vulnerable to the coronavirus. In the three months ended June 30, 2019, Eventbrite earned revenues of $80.8 million. In the three months ended June 30, 2020, it earned revenues of $8.4 million. Eventbrite may not survive the coronavirus.

Thus, the Settlement recovers a smaller percentage of total damages than the median because this case presents more difficulties than the typical securities class action.

The State Plaintiffs do not contest any of this. Instead, they claim that the Settlement must be inadequate because their claims were not dismissed with prejudice and they will receive additional discovery. State Plaintiffs speculate that more discovery will prove favorable, though discovery to date has not and they give no reason to expect that it will be. Nor do State Plaintiffs explain how discovery will help them overcome the fundamental problem with their case: that the State Court found that the statements themselves did not imply what the State Plaintiffs took from them.

Moreover, surviving a demurrer in California state court is not a crucial inflexion point like surviving a motion to dismiss securities claims in federal court. Surviving a motion to dismiss opens the doors to discovery; the State Plaintiffs were already entitled to discovery. Because Plaintiffs face heightened pleading standards in federal court, surviving a motion to dismiss gives confidence that a case has merit; the pleading standards in California state court are much lower, so State Plaintiffs' survival against a demurrer would give no such confidence. Thus, even if State Plaintiffs survived a demurrer, it is not clear that the settlement value of their case would necessarily increase.

Further, the State Plaintiffs' actions in this case hardly inspire confidence that they will overcome Defendants' demurrers. State Plaintiffs were told of the Settlement in July. Plaintiffs

publicly filed the Settlement on August 7. The deadlines to respond to motions are located in the Court's local rules. Yet State Plaintiffs *still* managed to miss the deadline. Having missed the deadline to object, State Plaintiffs instead filed a motion to stay. But their Motion cannot possibly achieve the result they seek because they thoughtlessly noticed their Motion to adjourn for a hearing on the same day as the Preliminary Settlement Hearing that their Motion asks the Court to adjourn. In their brief in support of their Motion, State Plaintiffs failed to cite authority for the proposition that the Court has authority to stay this case, ignored a decades of cases holding that class members cannot intervene to stop a settlement because they can already object, and misleadingly described that the State Court did not agree with Defendants on every single argument they made as a victory.

This is not the first time State Plaintiffs' Counsel have sought to intervene in a case to derail a settlement. It is at least the fourth.[7] While Courts have universally rejected State Plaintiffs' Counsel's attempts, Counsel should, at the very least, be familiar with the law and procedure of intervention to stay consummation of a settlement. This makes their failures in this case all the more striking.

**B. State Plaintiffs' Procedural Objections Lack Merit**

State Plaintiffs speculate that the Settlement is collusive. No. Settlement discussions were zealous and frank. Both Defendants' Counsel and Plaintiffs' Counsel have decades of experience litigating securities class actions. Plaintiffs took negotiations seriously. Laurence M. Rosen, founder of co-lead counsel The Rosen Law Firm, P.A., and Kara Wolke, partner at co-Lead Counsel Glancy Prongay and Murray LLP, personally led negotiations from Plaintiffs' side. Mr. Rosen and Ms. Wolke are neither neophytes nor pushovers – they recently jointly negotiated a $250 million settlement in a securities class action. The Parties exchanged settlement demands and offers. Mr. Rosen held long calls with Defendants' counsel to discuss the merits of the case and settlement proposals. Plaintiffs' Counsel held internal calls to discuss Defendants' moves and agree on next steps.

---

[7] *Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 990 (7th Cir. 2020); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (Bottini represented proposed intervenor Shepard); *Rosen v. Ingersoll-Rand Co.*, 372 Ill. App. 3d 440, 448 (2007).

Moreover, that Defendants did not separately approach State Plaintiffs suggest the discussions were not collusive. If Defendants were truly trying to pit the two groups of Plaintiffs against each other to conduct a reverse auction, they would also have conducted settlement discussions with the State Plaintiffs. And Plaintiffs here, because they bring both Section 11 and Section 10(b) claims, have a valuable bargaining chip State Plaintiffs do not have: they can offer total peace.

Finally, State Plaintiffs claim the Settlement is collusive because there was no mediator. This objection infantilizes attorneys. Every single day, throughout the country, attorneys negotiate settlements with opposing counsel without mediation. Attorneys *must* be capable of advancing their client's best interests through settlement discussions – it is part of their job.

### C. Plaintiffs Respectfully Disagree with the State Court's Statement that The Preliminary Approval Motion misstates the State Court's Order Sustaining the Demurrer to State Plaintiffs' Second Amended Complaint

Plaintiffs take seriously the State Court's statement that the Preliminary Approval Motion misstates the State Court's order dismissing the State Plaintiffs' Second Amended Complaint. Accordingly, Plaintiffs have carefully reviewed their Preliminary Approval Motion in light of the State Court's concerns. Having done so, Plaintiffs continue to believe that the Preliminary Approval Motion is not misleading.

First, the Preliminary Approval Motion consistently refers to the State Court's order as dismissing the State Plaintiffs' Amended *Complaint*, not their *case*. Discovery Order, at 11-12 That description does not suggest that the dismissal was with prejudice. It suggests the opposite. Indeed, Plaintiffs referred to dismissal of their own claims in the same way, though they were also granted leave to amend. *Id.* at 12 ("With claims against Eventbrite dismissed in state and federal court[.]")

Second, the State Plaintiffs *did* obtain substantial discovery. Based on the non-redacted portions of their Amended Complaint, discovery *did* include internal emails and correspondence.

Third, Plaintiffs cited the State Court's order in the brief.  Plaintiffs could not have intended to mislead the Court about a publicly-available order when they in fact referred the Court to the Order. They did not intend to hide or misrepresent anything about the Order.

Fourth, the State Plaintiffs had the opportunity to obtain nearly plenary discovery but failed

to do so. The State Court's order limited discovery until a ruling on Defendants' demurrers to Plaintiffs' initial Complaint, which came in November 2019. The State Plaintiffs did not fully take advantage of their right to obtain discovery. Indeed, though the State Court ordered the State Plaintiffs to submit a stipulated electronic discovery protocol and procedures order in August 2019, the State Plaintiffs did not do so until August *2020*.

And, finally, the representations about the state case in total occupy about one page of Plaintiffs' 24-page motion. Plaintiffs cite the dismissal as one reason, among many, that this Court should grant Preliminary Approval. *Id.* at 11-12.

State Plaintiffs also assert that Plaintiffs' description of the State Court's Order as dismissing their complaint is misleading because the State Court purportedly upheld certain of the claims. No. Their complaint was indeed dismissed because the State Court, like this Court, found that the complaint did not sufficiently allege that the Defendants had made a false statement. Rather, the State Court rejected certain arguments relating to Sections 12 and 15 of the Securities Act that Defendants had made in support of dismissal, where the State Plaintiffs' burden was minimal.

Section 15. This Court dismissed claims under Section 15 of the Securities Act for failure to allege a primary violation. Dkt. No. 59, at 9. So did the State Court. Dismissal Order, at 28. But rather than stopping there, the State Court held that Plaintiffs had sufficiently alleged *control* because the defendants were "corporate officers and/or directors" of Eventbrite who had either signed or been personally involved in drafting the Registration Statement. The argument that the State Plaintiffs defeated is so inconsequential that Defendants did not bother to make it in this case. Dkt. No. 42, at 25 n.10.

Section 12. To plead a claim for violation of Section 12, the plaintiff must show that the defendants made a false statement. The State Court dismissed the Section 12 claims because the State Plaintiffs failed to do so. Dismissal Order, at 13. But the State Court did find that the State Plaintiffs had sufficiently alleged that certain defendants were among the group of people who *could* be liable, chiefly by alleging their positions. State Plaintiffs face a much more difficult challenge when they must prove their allegations. Section 12 requires privity. They are only available to persons who bought shares directly in the Eventbrite IPO. Yet State Plaintiffs alleged that they

purchased shares "that were issued in the IPO and pursuant and traceable to the Offering Documents." State ¶¶15-17. While State Plaintiffs' minimal allegations sufficed to survive a demurrer, they suggest that State Plaintiffs did not purchase shares in the IPO, and that they therefore would not be able to prove their Section 12 claims.

Thus, the State Plaintiffs' victories are inconsequential and do not advance their case. It is misleading for them to claim otherwise.

### D. State Plaintiffs' Damages Estimates Are Not Realistic

State Plaintiffs also take issue with Plaintiffs' damages estimates. State Plaintiffs claim that Plaintiffs' estimate that Section 11 damages are $33.5 million is too **high**, which makes the Settlement even more favorable. Molumphy Dec Ex. 4, Declaration of Bjorn I. Steinholt, CFA ("Steinholt Dec."), ¶11. State Plaintiffs also argue that damages in their own case are higher because they filed suit after this case was filed, on a day in which Eventbrite's stock price was lower. But State Plaintiffs cite no authority for the proposition that the relevant date to assess damages relevant to the Settlement of this Action is the date their own later suit was filed, rather than the date the first Section 11 complaint was filed.

Second, even if State Plaintiffs have higher Section 11 damages, they may not raise Section 10(b) claims, over which the federal courts' jurisdiction is exclusive. State Plaintiffs estimate that their total damages are no more than $73.4 million. Steinholt Dec. ¶14. Plaintiffs here estimate total damages of $121.9 million. The damages Plaintiffs can pursue in this action are higher than those State Plaintiffs can pursue in their action, so even by their account, this action is likely to yield a higher recovery.

State Plaintiffs also provide an expert declaration stating that Section 10(b) damages are higher than Plaintiffs' expert estimated. They give no details on their calculations. Experts create damages estimates by estimating the total number of damaged shares using in-house mathematical models. To ensure they had accurate damages numbers, Plaintiffs obtained damages estimates from two experts. One reached the estimate Plaintiffs provided in their brief – Section 11 damages of $33.5 million and Section 10(b) damages of $121.9 million. The other estimated section 10(b) damages of $129.9 million - $8 million more – but Section 11 damages of only $23.8 million, or

$9.7 million less. In their brief, Plaintiffs provided damages figures from the expert who reported overall higher damages. But that both experts provided similar estimates corroborates Plaintiffs' damages figures.

State Plaintiffs' expert estimates Section 10(b) damages of $163 million.[8] But Plaintiffs used their expert's damages estimate to negotiate the Settlement. Their incentive was to advance the highest possible *credible* damages figure. State Plaintiffs use their estimate in an attempt to show that the Settlement is inadequate. They do not assert Section 10(b) claims, so their estimate will never be challenged. Because State Plaintiffs' damages estimate does not face the acid test of reality, their assumptions need not be credible, which explains why it is higher.

Finally, State Plaintiffs' more specific criticisms are inaccurate. State Plaintiffs' expert notes that 21 million Class A shares held by pre-IPO investors were converted to Class B shares during the Class Period, which can be publicly sold. He assumes these shares were actually resold onto the market. Steinhold Dec. ¶18. But these sales would be reflected in public trading records. Plaintiffs' experts relied on public trading records to estimate damages, so their model does take into account the Class A shares. State Plaintiffs' expert also speculates that Plaintiffs' experts did not include shares purchased by Class Members from short sellers, but he cites no evidence to support his conclusion.

In sum, estimates of Class-wide damages in a securities class action are just that—estimates. And reasonable economic experts can and do find arguments to challenge others' estimates. In the end, this is why the amount of recovery as a percentage of total maximum damages potentially available is but one of a number of factors that courts consider in assessing the reasonableness of a proposed settlement, in addition to the "costs, risks, and delay of trial and appeal"—which are very real in this case. *See* Rule 23(e)(2)(C)(1). As set forth in Plaintiffs' Motion for Preliminary Approval, the totality of the relevant factors—including the amount recovered as compared to maximum damages in light of the risks of continued litigation—supports approval.

---

[8] In Plaintiffs' experience, parties do not use single trader models as bases for negotiations. Thus, that State Plaintiffs' expert estimates single trader model damages of $206.2 million is not relevant.

## VI. CONCLUSION

For the foregoing reasons, the Court should (i) deny the State Plaintiffs' motion to intervene, (ii) treat the State Plaintiffs' motion to intervene as an objection to preliminary approval of the Settlement, (iii) overrule State Plaintiffs' objection, and (iv) preliminarily approve the Settlement.

Dated: October 8, 2020                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Jonathan Horne (pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com


**GLANCY PRONGAY & MURRAY LLP**
By: */s/ Kara M. Wolke*
Robert V. Prongay
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160


*Co-Lead Counsel for Plaintiffs and the proposed Class*

**PROOF OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On October 8, 2020 I electronically filed the following **PLAINTIFFS' OPPOSITION TO STATE PLAINTIFFS' MOTION TO INTERVENE AND ADJOURN PRELIMINARY APPROVAL HEARING** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

I certify under penalty of that the foregoing in true and correct.

Executed on October 8, 2020

/s/ Laurence M. Rosen
Laurence M. Rosen